EFRAÍN VÉLEZ SÁNCHEZ, patrono no-asegurado recurrente, *v.*
COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada;
JUAN E. MORALES RODRÍGUEZ, obrero lesionado.

*Número:* O-78-104 *Resuelto:* 26 de octubre de 1978

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El 7 de junio de 1973 el obrero recurrido Juan E. Morales Rodríguez viajaba como auxiliar (peón) en un camión International cargado de sal en Ponce con destino a Mayagüez, conducido por su dueño Moisés Valentín, y en jurisdicción de San Germán la rotura de la varilla del guía fue causa de que el conductor perdiera el control del vehículo que se volcó en un puente y cayó al río con su chófer, mas no así el peón reclamante quien se lanzó a la carretera sufriendo graves lesiones que requirieron varias intervenciones quirúrgicas.

Dicho obrero lesionado se personó al Fondo del Seguro del Estado para tratamiento cinco meses después del accidente e informó como su patrono al recurrente Efraín Vélez Sánchez, a quien el Fondo declaró patrono *no asegurado* el

27 de junio de 1975. En agosto de 1974 y según lo autoriza el Art. 15, párr. 2° de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 16), (¹) el obrero había presentado en la Sala de Mayagüez del Tribunal Superior demanda de daños y perjuicios contra su alegado patrono Vélez Sánchez, predicada en el Art. 1802 del Código Civil, pleito en el cual recayó sentencia el 1° de diciembre de 1975 absolviendo al demandado sobre determinaciones de hecho al efecto de que el lesionado no era empleado de Vélez Sánchez para el día del accidente, y que su patrono era Augusto Valentín (contratista de carga) y/o (*sic*) Moisés Valentín, chófer del camión. (²)

---

(¹) Art. 15.—*Patronos no asegurados*

. . . . . . . .

"Si cualquier patrono de los comprendidos en este Capítulo dejare de asegurar el pago de compensaciones por accidentes del trabajo de acuerdo con este Capítulo, cualquier obrero o empleado perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial, y, además, pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si este Capítulo no fuera aplicable, y tendrán derecho en tal acción, sin prestar fianza, a embargar la propiedad del patrono por el monto que determinare el Tribunal para asegurar el pago de la decisión que recayere, siempre que el Tribunal estime que hay una justa causa de acción después del examen de la demanda, la cual deberá ser jurada. Tal embargo incluirá honorarios de abogado, que serán fijados por el Tribunal, y el embargo se mantendrá hasta que el caso haya sido fallado y satisfecho el importe de la sentencia. Si como resultado de tal acción por daños y perjuicios recayere un fallo contra el patrono, en exceso de la compensación fijada por este Capítulo, la compensación fijada, si fuere pagada o si fuere garantizada con garantía aprobada por el Tribunal, se deducirá del fallo."

(²) El juez estimó probado que el recurrente no tuvo más relación con este caso que la de haber sido un dueño anterior del camión accidentado, el cual compró por $800 a Juan Arcelay, sin que se notificara el traspaso a Transportación y Obras Públicas, desprendiéndose del vehículo el 2 de mayo de 1973, fecha en que lo vendió por $900 a Moisés Valentín, a quien extendió un recibo admitido en evidencia.

En lo que concierne a la relación de patrono y empleado, cuestión central del pleito, el juez sentenciador llegó a las siguientes conclusiones:

"El camión se constituyó [*sic*] en pérdida así como su carga, la cual fue pagada a su dueño—La Central Igualdad—por el Sr. Augusto Valen-

Dicha sentencia advino final y firme por no haber el lesionado demandante instado recurso para su revisión. En abril de 1976 el obrero presentó una petición de compensación ante la Comisión Industrial alegando los mismos hechos adjudicados

tín—padre del conductor—que era la persona a nombre de quien estaba el contrato con la Central Igualdad para el acarreo de la carga de sal.

"A pesar de las alegaciones en contrario hechas por el demandante Juan E. Morales Rodríguez, la prueba a juicio de este Tribunal, fue abrumadora en cuanto a que el dueño del camión accidentado a la fecha del accidente lo era Moisés Valentín; que el contrato para el acarreo de la sal estaba a nombre de Augusto Valentín y que al momento del accidente el demandante servía como peón en la transportación de la carga para Augusto Valentín y/o Moisés Valentín y no para el demandado Efraín Vélez Sánchez. A estos efectos el testimonio de Zoilo Martínez, empleado de la Central Igualdad, como agente de compras y única persona con facultad en la Central para contratar el acarreo de sal, es a nuestro juicio orientador en la problemática de la cuestión fundamental en la controversia planteada —la relación obrero patronal entre demandante y demandado al momento del accidente—. Este testigo aseguró que no tiene ni ha tenido relación comercial o de parentesco con el demandado; que compra para la Central Igualdad sal para la planta de filtración a la Ponce Salt Industries; que nunca Efraín Vélez Sánchez ha acarreado sal para la Central; que conoce a Moisés Valentín y que la Central Igualdad ha contratado siempre este servicio con el padre Augusto Valentín; que el contrato de acarreo era verbal y Moisés era el que traía el cargamento; que se le pagaba a razón de treinta centavos el quintal y no le exigían nóminas ni ningún tipo de seguro. La Central no participaba en la contratación de los peones de Moisés.

"En adición, a través del testimonio del Sr. Vega, Contador del demandado, se presentó en evidencia las nóminas de empleo y de seguro social, así como la planilla de contribución sobre ingresos radicada por el demandado en el curso de su negocio de estación de gasolina y a pesar de que otros empleados aparecen en dichos documentos, no así el demandante, sin que exista justificación o motivo para que de haber sido efectivamente un empleado dejare de aparecer en dichos documentos como efectivamente aparecen los demás empleados del demandado.

"Que toda la documentación del camión se perdió en el accidente, sin embargo no hay duda alguna de que aparece inscrito a nombre de Juan Arcelay en el Departamento de Obras Públicas.

"El demandado Efraín Vélez Sánchez no se dedicaba a la fecha del accidente al acarreo de sal ni de mercancía y/o mercadería de clase alguna. Se dedicaba a operar, como dueño, una estación de gasolina Mobil en Añasco, Puerto Rico.

"Los desperfectos del camión que provocaron el accidente no son de responsabilidad del demandado toda vez que éste no hizo arreglos ni inter-

en su contra en la acción civil, y el demandado opuso la excepción de cosa juzgada la cual fue rechazada por la Comisión aduciendo como fundamento que los remedios provistos por el citado Art. 15 de la Ley no están disponibles hasta no haber una previa determinación, final y firme, por el Fondo del Seguro del Estado de la condición o *status* de patrono no asegurado, y que por tanto el Tribunal Superior actuó sin jurisdicción.

Al recurso de revisión del demandado expedimos el auto el 13 de abril, 1978 quedando el caso del recurrente sometido por los argumentos de su petición, y sin que el obrero recurrido haya sometido alegato alguno.

El Art. 15 de la Ley (11 L.P.R.A. sec. 16) es explícito en su institución de una dualidad de remedios para el obrero lesionado en accidente laboral mientras trabajare para un patrono no asegurado, que el estatuto define así: "una petición para compensación ante la Comisión Industrial, y, además [puede] ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si este Capítulo no fuera aplicable." La determinación de la condición de patrono no asegurado por el Fondo del Seguro del Estado es una fase inicial del procedimiento administrativo que habrá de continuarse ante la Comisión, pero no es requisito previo ni mucho menos jurisdiccional para la adjudicación de la cuestión litigiosa en el ámbito judicial. Dicha condición de patrono no asegurado es susceptible de determinación sin gran

---

vino en forma alguna con la fase mecánica o eléctrica del camión, no siendo por ello de aplicación el Artículo 1802 del Código Civil vigente.

"José E. Morales Rodríguez a la fecha del accidente no era empleado del demandado.

"Que a la fecha del accidente no existió relación contractual alguna entre el demandado y la Central Igualdad, ni con Moisés Valentín ni Augusto Valentín."

dificultad por los tribunales y no hay razón para detener la marcha eficiente del procedimiento civil en espera de un trámite administrativo, que en ley no precede sino que coexiste como opción, con la acción civil.

■ El citado párrafo 2° del Art. 15 (11 L.P.R.A. sec. 16) termina disponiendo: "Si como resultado de tal acción por daños y perjuicios recayere un fallo contra el patrono, en exceso de la compensación fijada por este Capítulo, la compensación fijada, si fuere pagada o si fuere garantizada con garantía aprobada por el tribunal, se deducirá del fallo." El propósito legislado es que el Fondo del Seguro del Estado pueda en los casos apropiados recuperar la compensación y gastos incurridos en la atención del caso mas ese propósito no se asegura en el estatuto con la eficacia que lo hace el procedimiento de subrogación(³) en acción contra tercero causante del daño ordenado en el Art. 31 para casos de patronos asegurados, el cual detiene la iniciativa del lesionado o sus beneficiarios en caso de muerte hasta transcurridos 90 días de la fecha en que la decisión del Administrador fuere firme y ejecutoria. Como consecuencia, el obrero recurrido corría el riesgo de que su acción de daños y perjuicios prescribiera. *Tropigas de P.R.* v. *Tribunal Superior*, 102 D.P.R. 630, 637,

---

(³) El Art. 15 provee para la subrogación no por el Administrador, sino por el patrono, en su párrafo final que dice:

"En los casos declarados no asegurados, en que el accidente surja debido a la negligencia de tercero, el patrono no asegurado que haya satisfecho al Fondo del Seguro del Estado el monto de la liquidación del caso, o haya asegurado su pago mediante el depósito de una fianza a satisfacción del Administrador, podrá subrogarse en los derechos del obrero para resarcirse de los gastos incurridos como consecuencia del accidente. El obrero o empleado o sus beneficiarios serán parte en el procedimiento que se estableciere con el fin de ejercitar la causa de acción que tengan contra el tercero o contra el patrono no asegurado, según sea el caso y cualquier suma que se recobrare en exceso de la suma satisfecha al Fondo del Estado por el patrono no asegurado para cubrir la liquidación del caso, se hará efectiva al lesionado, o a sus beneficiarios en caso de muerte, sin el consentimiento de los cuales ninguna transacción extrajudicial tendrá validez."

(1974); *cf. El Día, Inc.* v. *Tribunal Superior,* 104 D.P.R. 149, 151 (1975).

El estado actual de la Ley deja la recuperación de los dineros desembolsados por el Fondo del Seguro del Estado por gastos de tratamiento y compensación del obrero en los casos de patrono no asegurado, a la eventualidad de que el Administrador se entere indirectamente de que se ha iniciado la acción civil de daños y perjuicios. La protección de este interés del asegurador queda servida con simplemente añadir al párrafo 2° del Art. 15 de la Ley el requisito de que al tiempo de iniciar la acción civil de daños y perjuicios, el obrero o empleado perjudicado o sus beneficiarios deberán remitir copia de su demanda, por correo certificado, al Administrador del Fondo del Seguro del Estado, y de faltar dicha notificación se desestimará el pleito.

 Esta acción judicial tiene vida e integración propia, independiente por completo del procedimiento administrativo. El obrero recurrido hizo una libre elección de remedio al ejercitar la acción civil, a tenor del Art. 1802 y su caso fue visto y adjudicado en sus méritos. Convertida en firme, la sentencia del Tribunal Superior es oponible como cosa juzgada a la petición para compensación posteriormente radicada ante la Comisión Industrial.

*Se dictará sentencia de conformidad. Revocada.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Dávila concurre en el resultado sin opinión.