DAISY VEGA LOZADA y OTROS, demandantes y recurrentes, *v.* J. PÉREZ Y CÍA., INC. y OTROS, demandados y recurridos.

*Número:* RE-92-370          *Resuelto:* 11 de abril de 1994

748

*Héctor L. Moreno Luna*, abogado de los recurrentes; *José J. Santiago*, de *Fiddler, González & Rodríguez*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Este caso nos brinda la oportunidad de precisar cuándo comienza a transcurrir el término prescriptivo de la acción judicial de daños y perjuicios establecida en el Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 16, para los casos de patronos no asegurados.

I

J. Pérez & Cía., Inc. (en adelante J. Pérez Inc.) es un patrono que se dedica al negocio de venta de comestibles. Desde 1923 ha mantenido vigente una póliza para cubrir a sus empleados contra accidentes del trabajo con el Fondo del Seguro del Estado (en adelante Fondo) y sus organismos predecesores. El 10 de junio de 1982 el Fondo, como parte del procedimiento de cobro, envió a J. Pérez Inc. una notificación de cobro de primas de seguro obrero para 1981–1982 y primer semestre de 1982–1983. En la misma le indicó la liquidación final de primas para 1981–1982 y la

prima preliminar para 1982–1983. La liquidación final incluía un balance adicional de $1,107.51. El 50% de la prima preliminar ascendía a $3,540.75 que, sumados al balance adicional, totalizaban $4,648.26. El Fondo concedió a J. Pérez Inc. hasta el 20 de octubre de 1982 para el pago de la suma referida. Le apercibió de que "la falta de pago total de la prima dentro del término o su prórroga surtirá el efecto de suspender la efectividad de su póliza". Le concedió, además, hasta el 31 de enero de 1983 para el pago del restante 50% de la prima para 1982–1983 ($3,540.75). J. Pérez Inc. no solicitó prórroga para pagar.

El 17 de noviembre de 1982 J. Pérez Inc. envió al Fondo un pago parcial por $3,540.75 y quedó al descubierto un balance adicional de $1,107.51 de la liquidación final para 1981–1982.

El 24 de diciembre de 1982, sin que aún J. Pérez Inc. hubiese pagado el balance adicional de la liquidación final para 1981–1982, Julio E. Franco Piñeiro, empleado de la compañía en cuestión, sufrió un accidente laboral que le ocasionó gravísimas heridas craneales y trauma cerebral severo. Luego de dicho accidente, Franco recibió los correspondientes beneficios del Fondo. El 5 de julio de 1985 el Administrador del Fondo le notificó al obrero lesionado su decisión de declarar a J. Pérez Inc. patrono no asegurado en relación con el accidente de 24 de diciembre de 1982.[1]

Esta notificación la recibió Daisy Vega Lozada en su hogar mientras su esposo Franco Piñeiro se encontraba internado debido a una condición mental. Con dicha notificación la recurrente se enteró por primera vez de que J. Pérez Inc. era patrono no asegurado al momento en que su esposo sufrió el accidente que produjo su incapacidad. Antes del recibo de dicha notificación, la recurrente no había recibido indicio alguno que la llevara a pensar que J. Pérez Inc. no

---

[1] Según esta decisión, el referido patrono pagó tardíamente la suma adicional de $1,107.51 perteneciente a la liquidación final para el período de 1981–82. Esto provocó que el Fondo le negara la cubierta para la fecha del accidente.

estaba al día en el pago de las primas de su seguro patronal.

Transcurrido el término legal de treinta (30) días para revisar la decisión del Fondo sin que J. Pérez Inc. apelara de la determinación que le declaró patrono no asegurado, la recurrente presentó una demanda de daños y perjuicios contra J. Pérez Inc. por sí y en representación de su esposo e hijos.(²) El patrono contestó la demanda y alegó como defensas afirmativas que la acción estaba prescrita y que él era un patrono asegurado. Solicitó una sentencia sumaria a su favor, fundamentada en la defensa de inmunidad patronal. El 6 de febrero de 1992 el tribunal a quo dictó sentencia sumaria a favor del demandado por entender que dicho patrono estaba asegurado al momento del accidente y, por lo tanto, inmune a la acción en daños y perjuicios. Dicha sentencia fue notificada el 11 de febrero de 1992. El 26 de febrero de 1992 la parte demandante solicitó su reconsideración. El 28 de febrero de 1992 el tribunal le concedió un término de veinte (20) días a la parte demandada para que replicara a la moción de reconsideración. El 27 de marzo de 1992 el tribunal dictó nueva sentencia mediante la cual desestimó todo el pleito, pero esta vez por el fundamento de *prescripción*. Esta sentencia fue archivada el 1ro de abril de 1992. La parte demandante solicitó la reconsideración de esta segunda sentencia el 10 de abril de 1992, al igual que determinaciones de hecho y de derecho adicionales. La consideración de di-

---

(²) No obstante haber transcurrido el término para revisar la decisión del Fondo del Seguro del Estado (en adelante Fondo), el 14 de octubre de 1985 (a 101 días de haberse notificado la decisión del Administrador del Fondo) J. Pérez & Cía., Inc. (en adelante J. Pérez Inc.) presentó un escrito de apelación ante la Comisión Industrial (en adelante Comisión) en el que solicitó que se le declarase patrono asegurado. La Comisión accedió y revocó la determinación del Administrador del Fondo mediante la Resolución de 15 de abril de 1986. Esta actuación provocó que la representación legal del obrero lesionado nos solicitara la revisión de dicha resolución. Mediante Sentencia de 30 de abril de 1990 (90 J.T.S. 69) revocamos y resolvimos que la Comisión carecía de jurisdicción para revisar la decisión del Fondo por haber transcurrido el término para ello, por lo que quedaba en vigor la determinación previa de patrono no asegurado.

chas mociones fue pospuesta por encontrarse de vacaciones el juez a cargo del caso, según surge de la Orden de 9 de abril de 1992, notificada el 15 abril de 1992. El 10 de julio de 1992 el tribunal acogió las mociones del demandante y concluyó que la acción del obrero y la de sus dos (2) hijos menores no estaba prescrita a tenor del Art. 40 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 254. No obstante, resolvió que la acción de la señora Vega Lozada estaba prescrita. La recurrente no estuvo de acuerdo y oportunamente acudió ante nos para solicitar la revisión del dictamen de instancia. El 9 de octubre de 1992 expedimos el recurso solicitado.

## II

Antes de examinar el planteamiento de la recurrente, procede evaluar un señalamiento jurisdiccional de la recurrida. Ésta alega que la tercera sentencia de instancia, titulada Segunda Resolución de Reconsideración y Sentencia Sumaria fue emitida sin jurisdicción y que, por lo tanto, la solicitud de revisión presentada ante nos fue radicada fuera de término.

No tiene razón la recurrida. La segunda sentencia de instancia de 27 de marzo de 1992 fue dictada como resultado de una moción de reconsideración acogida por el tribunal. Por ello es propiamente una nueva sentencia que sustituyó la primera, al ser revocada ésta expresamente por el tribunal. Surge del texto de dicha segunda sentencia lo siguiente:

El Tribunal luego de tener la oportunidad de revisar más detenidamente los autos del presente caso, toda la documentación sometida, así también como la Sentencia, la Reconsideración y la jurisprudencia aplicable entiende de que la parte demandante en este caso le asiste la razón; ha logrado mover la discreción del Tribunal en su Moción de Reconsideración para que el Tribunal *revoque* su Sentencia Sumaria del día 6 de febrero de 1992 por entender que los fundamentos utilizados en

la misma estaban incorrectos. (Énfasis suplido.) Apéndice 6 de la Solicitud de revisión, pág. 51.

Por lo tanto, la llamada "segunda" moción de reconsideración no fue más que una reconsideración de la nueva sentencia, de 27 de marzo de 1992, lo que en derecho procedía. Esta última reconsideración fue presentada y acogida a tiempo y dio lugar a la tercera sentencia de instancia, que es la que está ante nos y respecto a la cual el recurso fue presentado dentro del término jurisdiccional.

Resuelto el planteamiento jurisdiccional, procedemos a evaluar si el tribunal de instancia actuó correctamente al resolver que la causa de acción de la demandante estaba prescrita.

## III

La Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, concede inmunidad contra las acciones de daños y perjuicios por accidentes laborales a los patronos asegurados con el Fondo. Sin embargo, *por excepción*, autoriza al obrero perjudicado o a sus beneficiarios a instar una acción de daños y perjuicios si el patrono no está asegurado. Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, *supra.* Esta acción, aunque se rige principalmente por las normas generales del Código Civil y la jurisprudencia (*Castro v. Marrero*, 54 D.P.R. 201 (1939); *Rosario Rivera v. Ramos*, 105 D.P.R. 114 (1976)), también está regulada en parte por la referida ley (11 L.P.R.A. sec. 16) que establece que en dicha acción civil el patrono no podrá oponer las defensas de negligencia contributiva, asunción de riesgo o que la lesión fue producto de la negligencia de un contratista independiente. En este sentido difiere de la acción típica considerada en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. De cualquier modo, en ambos casos, el término prescriptivo aplicable es

de un (1) año. Véanse: Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298; *Vélez Sánchez v. Comisión Industrial*, 107 D.P.R. 797 (1978).

■ La acción de daños y perjuicios en contra de un patrono no asegurado, como hemos señalado, es de naturaleza excepcional y está basada esencialmente en el hecho fundamental de que el patrono no está asegurado por el Fondo. De otro modo, no existiría esta particular causa de acción, ya que dicho patrono estaría protegido por la inmunidad patronal que provee la ley. En vista de ello, como cuestión de realidad práctica, el conocimiento de si el patrono estaba asegurado o no adquiere especial importancia al momento en que se considera incoar la acción. Procede determinar, entonces, qué efecto —si alguno— tiene dicho conocimiento en cuanto al término prescriptivo de esta acción.

■ Como se sabe, la prescripción es materia sustantiva y no procesal, regida por los principios que informan el derecho civil. *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981). Tiene su fundamento en la necesidad de poner fin a la inseguridad jurídica y a otros efectos adversos que surgen cuando se postergan o dejan pendientes posibles acciones judiciales. Persigue también el fin de sancionar el abandono de derechos por el titular de éstos. Q.M. Scaevola, *Comentarios al Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 1, pág. 237. En *Colón Prieto v. Géigel*, 115 D.P.R. 232, 243 (1984), explicamos estos propósitos del modo siguiente:

La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. *Agulló v. ASERCO*, 104 D.P.R. 244, 248 (1975). Su innegable necesidad y valor responden a "una presunción legal de abandono, derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho". *Eisele v. Orcasitas*, 85 D.P.R. 89, 93 (1962). *Sin embargo, ninguno de los intereses a los cuales responde es absoluto* —de un lado salvaguardar un derecho y del otro darle carácter definido a la incertidumbre de una

posible reclamación— *sino que deben ser aquilatados en su justa proyección.* (Énfasis suplido y en el original.) Véanse, además: *Alicea v. Córdova,* 117 D.P.R. 676 (1986); *Ortiz v. Municipio de Orocovis,* 113 D.P.R. 484 (1982); *Sánchez v. Cooperativa Azucarera,* 66 D.P.R. 346 (1946); *Cruz v. González,* 66 D.P.R. 212 (1946).

Evidentemente se trata de un asunto que admite ajustes judiciales, según lo requieran las circunstancias y nuestras nociones sobre lo que es justo.

En *Colón Prieto v. Géigel,* supra, resolvimos además que el verdadero punto de partida para el inicio del término prescriptivo de una acción de daños y perjuicios es la fecha en que el agraviado supo del daño y *pudo ejercitar su acción.* Al así resolver, aceptamos que el conocimiento que tenga el titular sobre si ha nacido ya la acción que tiene derecho a ejercer es un factor determinante al evaluar si está prescrita o no dicha acción. Por eso también hemos resuelto que un estatuto de prescripción que tenga el efecto de exigirle a los demandantes instar su acción antes de que tengan conocimiento de que tal causa de acción existe, viola el debido proceso de ley. *Alicea v. Córdova,* 117 D.P.R. 676 (1986). No cabe duda de que hemos acogido ya en Puerto Rico la tendencia liberal en la doctrina civilista en lo relativo a la prescripción de las acciones de daños y perjuicios. Conforme a esa tendencia, por consideraciones de justicia, se estima que el término para ejercer las acciones corre a partir, no desde que se sufre el daño reparable, sino desde que se conocen los otros elementos necesarios para poder ejercer la acción. Como bien señalan los eminentes comentaristas Barrel Macía y Santos Briz en sus respectivas obras sobre el derecho de daños, "para que la justicia quede a salvo en todo caso, con que el agraviado haya sabido de la obligación de reparar daños, se ha de requerir, además, que haya podido ejercitar la acción". J. Santos Briz, *Derecho de Daños,* Madrid, 1963, pág. 293. Y, claro está, no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a

ejercitarla. A tono con esta elevada concepción están nuestros pronunciamientos no sólo en *Colón Prieto v. Géigel,* supra, y en *Alicea v. Córdova,* supra, sino también en *Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987), y en *Toledo Maldonado v. Cartagena Ortiz,* 132 D.P.R. 249 (1992), donde también reiteramos que una acción de daños no nace mientras el perjudicado no tenga conocimiento de su derecho a esa acción. Claro está, si el desconocimiento que impide ejercer la acción se debe a la falta de diligencia del reclamante, entonces no son aplicables las aludidas consideraciones que la doctrina liberal civilista ha sobreimpuesto a la normativa general sobre la prescripción. *López v. Autoridad de Carreteras,* 133 D.P.R. 243 (1993); J.M. Manresa y Navarro, *Comentarios al Código Civil Español,* Madrid, Ed. Reus, 1973, T. XII, págs. 1224–1225.

## IV

Examinemos ahora los hechos del caso a base de la exposición doctrinal antes expuesta. Surge de los autos que el patrono, de ordinario, mantenía vigente su póliza y que incluso hizo el pago correspondiente al primer semestre 1981–1982. También efectuó el pago del segundo semestre, aunque de modo incompleto. Ante estas circunstancias, la recurrente podía descansar plenamente en la presunción jurídica de que la ley que requiere a los patronos asegurarse con el Fondo y hacer el pago de sus pólizas dentro del plazo requerido había sido acatada. Véase Regla 16 de Evidencia de 1979 (32 L.P.R.A. Ap. IV). Sólo J. Pérez Inc., como patrono con el control *exclusivo* de esa información, sabía que al ocurrir el accidente podía estar al descubierto por no haber satisfecho dentro del plazo requerido por el Fondo la deficiencia correspondiente al pago del segundo semestre. No existe evidencia en los autos de que la señora Vega tuviese conocimiento de esta información. Al contrario, todo el trámite realizado por J. Pérez Inc. para tratar

de pagar la deficiencia fuera del término y sus trámites en apelación, también fuera del término, ante la Comisión para dejar sin efecto la determinación de patrono no asegurado, revelan una actitud de *ocultar* al perjudicado la información de que no tenían los pagos de la póliza al día. No puede imputársele dicho conocimiento a la demandante y luego resolver que estaba prescrita su acción. Como bien afirma Puig Brutau, "no puede entenderse nacida la acción cuando la lesión del derecho ocurra en unas circunstancias tales que supongan un acto ... oculto del cual no pueda tener conocimiento el titular del derecho, que actúa con el grado normal de diligencia que establece la ley". J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1979, T. I, Vol. 1 (2da parte), pág. 877.

La recurrente no presentó su acción poco después de haber ocurrido el accidente laboral debido al efecto inhibidor de la conocida inmunidad patronal, no por un abandono voluntario de su causa. Al momento del accidente la recurrente, quien descansó en la presunción de ley antes citada, creía de buena fe que el patrono estaba asegurado y que, por ende, no poseía una causa de acción. No es hasta que recibe la notificación del Fondo que declaró a J. Pérez Inc. patrono no asegurado al momento del accidente de su esposo, que la recurrente adviene en conocimiento de que podía reclamar a dicho patrono por no estar éste cubierto por la inmunidad patronal. A partir de ese momento actuó diligentemente. Esperó que la decisión del Fondo, en la cual se declaró a J. Pérez Inc. patrono no asegurado, fuera final y firme y, un mes después, presentó la demanda de daños y perjuicios.

A la luz de estos hechos, aplica claramente aquí la tendencia liberal de la doctrina civilista que ya hemos acogido en Puerto Rico. En cuanto al asunto de la prescripción, su acción de daños no nació hasta que la perjudicada tuvo conocimiento de su derecho a esa acción.

Lo expresado anteriormente no es incompatible con lo resuelto en *Vélez Sánchez v. Comisión Industrial,* supra. En dicho caso no teníamos propiamente ante nos una cuestión de prescripción. Allí el obrero presentó una demanda bajo el Art. 1802 del Código Civil, *supra,* contra su alegado patrono. El Tribunal a quo declaró sin lugar la demanda y determinó que el demandante no era empleado del demandado el día del accidente, sino de otro patrono. Lo que dio lugar al recurso fue que antes de dictarse esta sentencia el Fondo determinó que dicho demandado no era un patrono asegurado. El obrero entonces presentó otra acción idéntica contra el mismo demandado ante la Comisión y el alegado patrono invocó la defensa de cosa juzgada. La Comisión se negó a aceptar tal defensa. Adujo que el tribunal de instancia había actuado *sin jurisdicción* al dictar la anterior sentencia, porque no existía una determinación previa del Fondo de que el demandado era patrono no asegurado. Al revocar la decisión de la Comisión, resolvimos concretamente que el obrero en ese caso tenía derecho a ejercitar su acción ante los tribunales o ante la Comisión, pero que una vez escogía la vía judicial, la resultante sentencia del Tribunal Superior, al advenir firme, era oponible como cosa juzgada respecto a la misma acción presentada luego ante la Comisión. Fue en este contexto que indicamos que:

> La determinación de la condición de patrono no asegurado por el Fondo del Seguro del Estado es una fase inicial del procedimiento administrativo que habrá de continuarse ante la Comisión, pero no es requisito previo ni mucho menos jurisdiccional para la adjudicación de la cuestión litigiosa en el ámbito judicial. Dicha condición de patrono no asegurado es susceptible de determinación sin gran dificultad por los tribunales y no hay razón para detener la marcha eficiente del procedimiento civil en espera de un trámite administrativo, que en ley no precede sino que coexiste como opción, con la acción civil. *Vélez Sánchez v. Comisión Industrial,* supra, págs. 801–802.

Como puede observarse, hicimos este señala-

miento sólo para despachar la cuestión de si el tribunal de instancia tenía jurisdicción o no para entender en la reclamación del obrero. Las aludidas expresiones nuestras se limitan a establecer que la determinación de inmunidad patronal no es un asunto que sólo el Fondo puede dilucidar, sino que los tribunales también poseen la capacidad para resolverlo cuando ello es necesario en acciones como las consideradas en *Vélez Sánchez v. Comisión Industrial*, supra. Sin embargo, el que los tribunales posean tal competencia no implica necesariamente que tengan que ejercerla siempre. A tenor con la doctrina de jurisdicción primaria, los foros judiciales de ordinario se abstienen de pasar juicio sobre determinado asunto para permitirle a los organismos administrativos hacerlo bajo el supuesto de que éstos poseen destrezas y conocimientos especializados afines. *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992). De esta forma se promueven las decisiones mejor informadas a la vez que se reducen las posibilidades de adjudicaciones conflictivas o incompatibles. Por lo tanto, aunque en estos casos, conforme a *Vélez Sánchez v. Comisión Industrial*, supra, no es necesario que los procedimientos legales en los tribunales se paralicen en espera del trámite administrativo, lo más conveniente, a tenor con la doctrina de jurisdicción primaria, es que sea el Fondo quien realice la determinación inicial de inmunidad patronal. Así se establece un modo uniforme de notificación a los obreros para que puedan incoar las acciones legales correspondientes dentro del plazo establecido para ello. Aclaramos, pues, que nuestro pronunciamiento en *Vélez Sánchez v. Comisión Industrial*, supra, no tiene el alcance de impedir por razón de prescripción el ejercicio de las acciones de daños y perjuicios de obreros y otros perjudicados que en forma bonafide advienen en conocimiento por primera vez de que poseen una causa de acción contra el patrono cuando el Fondo les notifica que su

patrono no estaba asegurado para la fecha en que ocurrió el accidente.[3] Ello es particularmente cierto en casos como el de autos, en los que el patrono acostumbraba a mantener el pago de sus pólizas al día, por lo que no existía ningún indicio que le advirtiera a la parte demandante que el patrono no estaba al día en sus pagos. Dado que quien tiene control exclusivo sobre el pago de las pólizas es el patrono y que esta información, por razones obvias, no se divulga de ordinario a los obreros, sería injusto concluir que la acción en cuestión estaba prescrita, cuando resulta claro que la acción no fue incoada antes, por la creencia razonable del demandante de que el patrono gozaba de inmunidad.

Por otro lado, el caso *Franco v. Mayagüez Building, Inc.*, 108 D.P.R. 192 (1978), tampoco es de aplicación a la situación de autos, ya que en el mismo quien causó el daño no fue un patrono sino un tercero. A diferencia del caso de autos, el ejercicio de la acción del perjudicado no estaba subordinada a que el demandado no estuviese protegido por la inmunidad patronal. La decisión del Administrador del Fondo de subrogarse en los derechos del obrero en nada alteraba la identidad del causante del daño, por lo que el esposo y la sociedad de gananciales, en el caso *Franco v. Mayagüez Building, Inc.*, supra, no estaban impedidos de incoar su acción dentro del año en que ocurrió el accidente. Tenían *conocimiento* desde el mismo día en que ocurrió el accidente de quién causó el daño y podían, sin impedimento alguno, ejercer su acción.

Por lo tanto, resolvemos que el término prescriptivo para ejercitar la acción de daños y perjuicios, en casos

---

[3] El recurrido alega que el P. de la C. 323, el P. del S. 360 (18 y 19 de marzo de 1985) y el P. del S. 75 de 25 de enero de 1989 son evidencia de que el legislador se oponía a que el término para incoar la acción contra patronos no asegurados comenzara a transcurrir desde que el Fondo determina tal condición. Hemos examinado el historial legislativo existente y no hemos encontrado nada que sostenga tal interpretación. No podemos concluir, pues, que esa haya sido la intención legislativa respecto a este asunto.

como el de marras, comienza a transcurrir desde la fecha en que el Fondo notifique que el patrono no está asegurado. Conforme a lo anterior, *se dictará sentencia revocatoria de la determinación del tribunal de instancia de 10 de julio de 1992, de que la acción de la demandante Daisy Vega Lozada estaba prescrita.*

El Juez Asociado Señor Negrón García se inhibió.