*1112 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Gasolinas de Puerto Rico, Inc. (Gasolinas de Puerto Rico), solicita que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, la cual declaró con lugar una demanda de daños y perjuicios e incumplimiento de contrato imponiéndole responsabilidad solidariamente junto con Sarmar Puerto Rico, Corp. (Sarmar).
Se modifica la sentencia apelada para eliminar la responsabilidad que se le impuso a la apelante Gasolinas de Puerto Rico.
I
El 1 de octubre de 1995, Gasolinas de Puerto Rico y Sarmar subscribieron un contrato de arrendamiento de un inmueble localizado en la Avenida Galicia de la Urbanización Castellana Gardens de Carolina. Mediante el mismo, el arrendador, Gasolinas de Puerto Rico, sub-arrendó al arrendatario Sarmar el referido inmueble, para operar una estación de servicios de gasolina y tienda de conveniencia. Había, además, un área que era utilizada como negocio de lavado de carro ("car wash").
Como parte de las claúsulas y condiciones del contrato, el arrendatario Samar se comprometió a:
"Mantener y operar la estación en forma limpia, segura y saludable, con una apariencia tal que la misma sea atractiva al público automotriz, y acatar todas las leyes y reglamentos federales, estatales, y locales aplicables y relevantes al uso y operación de la estación." Cláusula Octava. (Ap., pág. 67).
La Cláusula Décima del contrato de sub-arrendamiento establece que el arrendatario Sarmar debía a su propio costo y gastos, mantener propiamente, efectuar mejoras y reparar los equipos y facilidades enclavados en la propiedad arrendada. Entre lo que debía realizar el arrendatario, era reparar escapes de agua de plumas y trampas, y limpiar trampas de grasa, según sea necesario. (Ap., pág. 68).
La Vigesimosexta Cláusula del contrato establece que el arrendatario no puede ceder en todo o parte, arrendar ni permitir la ocupación de todo o en parte, del inmueble arrendado, ni del comercio que en el mismo se operaría, ni vender, transferir, ni ceder ninguno de los derechos y privilegios conferidos sin la previa autorización por escrito del arrendador. (Ap., pág. 77).
Así las cosas, el 1 de mayo de 1996, se firmó un contrato, de sub-sub-arrendamiento sobre el referido inmueble. Mediante el referido contrato, Sarmar subarrendó los locales al lado norte de la estación de gasolina y de la tienda de conveniencia. En dicho contrato de sub-sub-arrendamiento compareció de la primera parte Sarmar como sub-sub-arrendador, de la segunda parte Hand Wash Auto Detail Center & Accesories Shop, Inc. (Hand Wash), representada por Bemie E. Pacheco Casiano, como sub-sub-arrendatario, y de la tercera parte Gasolinas de Puerto Rico. (E.N.P., págs. 5-6). Gasolinas de Puerto Rico compareció en dicho cotrato a los únicos efectos del confirmar que estaba de acuerdo con que se llevara a cabo el sub-sub-arrendamiento en conformidad con la cláusula vigésimosexta del contrato, de sub-arrendamiento. (E.N.P., pág. 10). .
Como parte de las cláusulas y condiciones, las partes acordaron, en la Cláusula Quinta, que sería responsabilidad del Hand Wash obtener todos los permisos y licencias relacionadas con la constmcción y la operación de la limpieza y brillo de automóviles. (Ap., pág. 57).
La Decimoquinta Cláusula del sub-sub-contrato establece que "el sub-sub-arrendatario deberá, a su propio costo y gastos, mantener propiamente las estructuras a construirse, mantendrá limpio el local en todas sus *1113 partes, incluyendo sin limitación, la limpieza y remoción de basura de los servicios sanitarios, jardines y los alrededores". (Ap., pág. 59).
Alrededor del mes de agosto de 1996 y luego de que Hand Wash comenzara a utilizar las facilidades, unas trampas del local sub-sub-arrendado por Hand Wash se llenaron, lo que dio motivo al cierre temporero de las facilidades. Para el 3 de septiembre de 1996, miembros de la Junta de Calidad Ambiental visitaron el local encontrando que las trampas del local estaban llenas y era la causa del desbordamiento de los desperdicios de grasa. La Junta de Calidad Ambiental prohibió toda actividad comercial en el lugar.
Las trampas fueron limpiadas por la empresa Diesel Servical, también conocida por Empresas UBS. (E.N. P., pág. 2). La compañía fue contratada por Gasolinas de Puerto Rico y ésta posteriormente facturó a Sarmar la limpieza realizada a las trampas. (E.N.P., págs. 3, 20, 27). Luego de que fuera limpiada la trampa, el local fue reabierto.
El 17 de septiembre de 1997, Hand Wash presentó demanda por daños e incumplimiento de contrato contra Sarmar, Gasolinas de Puerto Rico y las Compañías A, B y C. En la misma alegó que incumplieron el contrato firmado por las partes y esto le había causado daños y perjuicios por no poder operar su negocio.
El 1 de junio de 2000, el tribunal de instancia emitió sentencia mediante la cual declaró con lugar la demanda y condenó a Sarmar y a Gasolinas de Puerto Rico solidariamente a pagar a Hand Wash la cantidad de $15,000.00 por concepto de angustias y sufrimientos mentales sufridos, $1,000.00 en honorarios de abogado, más las costas y gastos del pleito.
Según la sentencia emitida por el tribunal de instancia, durante el juicio, el señor Bemie Pacheco Casiano testificó que se había reunido con funcionarios de Sarmar y con el ingeniero Jorge Bonín de Gasolinas de Puerto Rico, quien le representó en varias ocasiones que las trampas de grasa estaban limpias porque hacía apenas seis (6) meses se habían limpiado y le aseguró que no tendrían problemas.
Señaló el tribunal de instancia que, para la parte apelada Hand Wash, la representación de Gasolinas de Puerto Rico fue determinante a la hora de firmar el contrato de sub-arrendamiento con Sarmar. Que firmó el contrato confiado en la representación hechas por los funcionarios de las partes codemandadas, inclusive Gasolinas de Puerto Rico. Concluyó el tribunal de instancia que fue de acuerdo a esa representación negligente de Gasolinas de Puerto Rico, que la parte apelada accedió a sub-arrendar a Sarmar el correspondiente espacio.
Inconforme, Gasolinas de Puerto Rico acude ante nos alegando que incidió el foro apelado: primero, al no desestimar la acción incoada por estar la misma prescrita; segundo, al determinar que había una relación contractual entre la parte apelada Hand Wash y Gasolinas de Puerto Rico e imponerle $15,000.00 de daños y $1,000.00 por honorarios de abogado, cuando no tenía relación contractual alguna con la parte apelada; y tercero, al no determinar que la parte apelada minimizó sus alegados daños.
II
Cónsono con la norma jurídica antes esbozada, analicemos los hechos presentados.
Discutiremos primero el error señalado por la parte apelante en cuanto a que la acción incoada está prescrita, por incidir el mismo en nuestra jurisdicción.
El artículo 1802 del Código Civil impone a quien causa daño por culpa o negligencia, la responsabilidad de repararlo. 31 L.P.R.A. see. 5141. El artículo 1868(2) establece que las acciones que surjan bajo dicho artículo prescriben por el transcurso de un año desde que lo supo el agraviado. 31 L.P.R.A. see. 5298.
La prescripción es una figura de derecho sustantivo y constituye una forma de extinción de un derecho por *1114 la inercia de su titular en ejercitarlo. Tiene una utilidad social en la medida en que pretende eliminar la incertidumbre en las relaciones jurídicas al no dejar éstas al arbitrio de los particulares. Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 566 (1995); Herminio Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, Publicaciones J.T.S., 1986, pág. 567.
Nuestra jurisprudencia ha establecido que el punto de partida del término prescriptivo de una acción de daños y perjuicios, es la fecha que el agraviado conoció, tanto el daño como quién fue el autor del mismo; ello, porque sólo de ese modo el lesionado puede ejercitar efectivamente la acción. Toledo Maldonado v. Cartagena, 132 D.P.R. 249, 255 (1992).
En nuestra jurisdicción impera la teoría cognoscitiva del daño, para fines de determinar el punto de partida de las acciones en daños y perjuicios. La misma postula que el período prescriptivo de una acción civil por daños y perjuicios comienza a decursar desde que el agraviado tuvo conocimiento del mismo, según sostiene el Art. 1868 del Código Civil, 31 L.P.R.A. see. 5298; María de los Angeles Sánchez v. A.E.E., sentencia de 9 de abril de 1997, 97 J.T.S. 45, pág. 863, opinión concurrente de la Juez Asociada Naveira de Rodón.
Conforme a la tendencia liberal aludida, por consideraciones de justicia, se estima que el término para ejercer las acciones decursa a partir, no desde que se sufre el daño irreparable, sino desde que se conocen los otros elementos necesarios para poder ejercer la acción. Vega Lozada v. J. Pérez & Cía, 135 D.P.R. 746, 754 (1994).
En más de una ocasión ha reconocido el Tribunal Supremo la existencia de la doctrina de los daños recurrentes, mediante la cual los daños se extienden y se originan con carácter continuo o progresivo. Agosto Ortiz v. Mpio. de Río Grande, opinión de 20 de mayo de 1997, 97 J.T.S. 69, pág. 1016; Ríos Mártir v. Municipio de San Sebastián, 106 D.P.R. 172, 174-175 (1977); Seda v. Miranda Hnos & Co., 88 D.P.R. 355, 361 (1963).
No puede invocarse la defensa de prescripción cuando se trata de daños y perjuicios continuos que están latentes hasta que cesa la causa que los genera. Bien puede decirse que, en tal caso, la acción dañosa se renueva de día en día, de hora en hora, de minuto en minuto, de segundo en segundo. Arcelay v. Sánchez Martínez, 77 D.P.R. 834, 837 (1955).
En el caso ante nos, los daños alegados en la demanda surgen de una trampa que se llenó para el mes de agosto de 1996. Dicha condición continuó, y para el 3 de septiembre del 1996, la Junta de Calidad Ambiental intervino ordenando el cierre de las operaciones que se llevaban a cabo en el local. El cierre continuó en efecto hasta que fue posteriormente limpiado.
Se trata en este caso de unos daños continuos para los cuales el término prescriptivo comienza de día a día mientras siga la actuación dañosa. Por lo tanto, la causa de acción presentada en la demanda no estaba prescrita, pues el 3 de septiembre de 1996, se ordenó el cierre del local y de esa fecha comenzaron los daños hasta el 11 de octubre de 1996, fecha en que se tuvo que mantener cerrado en negocio. La demanda se presentó el 17 de septiembre de 1997, dentro del plazo de un año; por lo tanto, no estaba prescrita.
III
Como segundo y tercer error, alega la parte apelante, en síntesis, que erró el tribunal de instancia al imponerle responsabilidad civil cuando no tenía relación contractual con la parte apelada.
Tiene razón, veamos los fundamentos.
Para que exista un contrato, es necesario que concurran los requisitos de consentimiento, objeto y causa. *1115 Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor con los mismos. Arts. 1213 y 1044, Código Civil, 31 L.P.R.A. sees. 3391 y 2994; Mercado Rivera v. Universidad Católica, opinión de 27 de junio de 1997, 97 J.T.S. 106, pág. 1276.
Los contratos sólo producen efecto entre las partes que lo otorgan y sus herederos. Ahora bien, si el contrato tuviere alguna estipulación a favor de un tercero, éste podrá exigir su cumplimiento, siempre que hubiese hecho saber su aceptación al obligado antes de que haya sido aquélla revocada. Artículo 1209, supra, 31 L.P.R.A. sec. 3374; Dennis Metro Invs. v. City Fed. Savings, 121 D.P.R. 197, 211 (1988); A.L. Arsuaga, Inc. v. La Hood Const., Inc., 90 D.P.R. 104, 111 (1964).
Los contratos son negocios jurídicos bilaterales que constituyen fuentes de las obligaciones desde que dos personas consienten voluntariamente a cumplir con los mismos. Las partes se obligan a lo pactado y a todo aquéllo que sea conforme al uso, costumbres y la ley. Amador Parrilla v. Concilio Iglesia Universal, opinión de 23 de marzo de 2000, 2000 J.T.S. 60, pág. 877.
Una vez finalizado un contrato, su validez y cumplimiento no puede dejarse al arbitrio de una de las partes contratantes, pues esto equivaldría a permitir que el principio de buena fe en toda la actividad contractual en el cumplimiento de las obligaciones, se viera menoscabada unilateralmente por una parte. Art. 1208, supra, 31 L.P.R.A. see. 3373; Consejo de Titulares v. Galerías Ponceñas, Inc., opinión de 16 de abril de 1998, 98 J.T.S. 45, págs. 824-825.
Si los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Sin embargo, si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas. Art. 1233, supra, 31 L.P.R.A. sec. 3471; Mattel v. Vélez, opinión de 7 de mayo de 1998, 98 J.T.S. 55, pág. 921; Marcial Burgos v. Tomé, opinión de 10 de diciembre de 1997, 97 J.T.S. 146, págs. 381-382.
Sobre la interpretación de los términos de un contrato, establece el Código Civil que cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar. Art. 1235, 31 L.P.R.A. sec. 3473; Marcial Burgos v. Tomé, supra, pág. 382. Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas, el sentido que resulte del conjunto de todas. Art. 1237, 31 L.P.R.A. sec. 3475; Olazábal v. U.S. Fidelity, 103 D.P.R. 448 (1975).
Sin embargo, cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado. Regla 69(B) de Evidencia, 32 L.P.R.A. Ap. IV (Supl. 2000) S.J. Credit, Inc. v. Ramírez, 113 D.P.R. 181, 190 (1982).
Por lo tanto, no cabrá entre los convinientes o sus sucesores en interés, evidencia extrínseca al contenido del convenio, excepto cuando una equivocación o imperfección en el convenio sea alegada en el litigio o cuando la validez del convenio constituye el hecho controvertido. Esta norma no es una mera cuestión evidenciaría, sino una importante norma de derecho sustantivo de la teoría general de las obligaciones y contratos. Hernández Torres v. Padilla Morales, opinión de 24 de abril de 1997, 97 J.T.S. 49, pág. 894; Marina Ind. v. Brown Boveri Corp., 114 D.P.R. 64, 69 (1983).
B
La norma establecida sobre la admisión errónea de evidencia, es que no se dejará sin efecto en apelación una determinación de admisión de evidencia, ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia, a menos que la evidencia que fue erróneamente admitida, a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, fue factor decisivo o sustancial en la sentencia o decisión cuya *1116 revocación se solicita. Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV (Supl. 2000); F.D.I.C. v. Caribbean MKTG. Ins. Agency, 123 D.P.R. 247, 260 (1989).
Por tanto, el criterio que debe utilizarse en casos ordinarios de errores en la admisión de evidencia, es, si de no haberse admitido erróneamente la prueba en controversia probablemente el resultado hubiera sido distinto. Pueblo v. Rosaly Soto, 128 D.P.R. 729, 745 (1981). En tales, circunstancias, el error es de tal naturaleza que da lugar a la revocación del dictamen revisado. Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV; F.D.I.C. v. Caribbean MKTG. Ins. Agency, supra, pág. 260.
Estos principios deben ser analizados bajo la máxima que nuestro más alto foro ha dicho en innumerables ocasiones, que la revisión de una decisión se da contra la sentencia y no contra sus fundamentos. Pagan v. Alcalde, Municipio de Cataño, opinión de 30 de mayo de 1997, 97 J.T.S. 76, pág. 1085; Sánchez Betancourt v. Eastern Airlines, 114 D.P.R. 691, 695 (1983).
Por último, hay que señalar que constituye un principio de derecho firmemente establecido que, en apelación, no debemos intervenir con la apreciación de la prueba que haya realizado el tribunal de instancia, a menos que medie pasión, prejuicio, parcialidad o que se haya incurrido en un error manifiesto. Feliciano Polanco v. Feliciano González, opinión de 17 de marzo de 1999, 99 J.T.S. 23, pág. 652; Flores Santiago v. Domínguez, opinión de 30 de junio de 1998, 98 J.T.S. 96, pág. 1354.
C
Con estos principios, es de rigor discutir los hechos ante nuestra atención.
El contrato de sub-sub-arrendamiento otorgado el 1 de mayo de 1996, fue suscrito entre Hand Wash como sub-sub-arrendataria y Sarmar como sub-sub-arrendador. Gasolinas del Puerto Rico compareció en dicho contrato a los únicos efectos de confirmar que estaba de acuerdo con que se llevara a cabo el contrato de conformidad con lo dispuesto en la Cláusula Vigesimosexta del contrato de sub-arrendamiento entre Gasolinas de Puerto Rico y Sarmar.
Dicha cláusula establecía que cualquier arrendamiento que realizara Sarmar tendría que hacerse con la autorización escrita de Gasolinas de Puerto Rico y precisamente a eso se limitó la comparecencia de Gasolinas de Puerto Rico.
Según los contratos suscritos por las partes, el tribunal de instancia sólo podía imponerle responsabilidad a Sarmar, quien fue la parte que contrató con Hand Wash. No hubo contrato alguno entre Hand Wash, representada por el señor Bemie Pacheco Casiano, y Gasolinas de Puerto Rico.
Siendo el contrato claro y no dejando lugar a dudas en cuanto a la intención de las partes; esto es, en cuanto a la relación contractual entre Hand Wash y Sarmar, el tribunal tenía que atenerse al sentido literal de las cláusulas en el contrato de sub-sub-arrendamiento. No podía el tribunal tomar en consideración el testimonio de la parte apelada a los efectos de que Sarmar y Gasolinas de Puerto Rico, representaron que las trampas estaban limpias. Esto es evidencia extrínseca que no debió permitir el tribunal de instancia; más aún, cuando la demanda lo que alega es el incumplimiento del contrato y no la invalidez del mismo, y se le impuso la responsabilidad civil a Gasolinas de Puerto Rico por las alegadas representaciones.
Concluimos ante las circunstancias antes esbozadas que incidió el Tribunal de Primera Instancia al imponerle responsabilidad a Gasolinas de Puerto Rico, y, por ende, los honorarios de abogado.
IV
Por los anteriores fundamentos, se modifica la sentencia emitida a los fines de eliminar la imposición de responsabilidad civil a Gasolinas de Puerto Rico y los honorarios de abogado, y así se confirma en cuanto a los *1117 demás extremos.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General