ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **GERMÁN SUÁREZ HERNÁNDEZ; JACKELINE FRANCO BONILLA; LUIS ALBERTO BERMÚDEZ BONILLA, Y SHEILA SUÁREZ PÉREZ** DEMANDANTE(S)-RECURRIDA(S) V. **AT&T OF PUERTO RICO, INC.; AT&T MOBILITY PUERTO RICO, INC.; CHUBB INSURANCE COMPANY OF PUERTO RICO; MASTEC NORTH AMERICA, INC.; CH RENTAL LLC; FM TECHNOLOGY GROUP LLC; MAPFRE PRAICO INSURANCE COMPANY; A Y B COMPAÑÍAS ASEGURADORAS; JOHN DOE Y RICHARD DOE** DEMANDADA(S) **CAPE FEAR UTILITIES, LLC** CO-DEMANDADA(S)-PETICIONARIA(S) | **KLCE202200203** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **Salinas** Caso Núm. **SA2019cv00094** (202) Sobre: Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

Barresi Ramos, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de febrero de 2023.

La compañía **Cape Fear Utilities LLC** (**Cape Fear**) comparece ante este Tribunal de Apelaciones mediante *Certiorari* incoado el 23 de febrero de 2022. En su recurso, nos solicita que revisemos la *Resolución* decretada el 30 de noviembre de 2021 por el Tribunal de Primera Instancia, Sala Superior de Salinas[1]. Mediante el referido dictamen, el foro primario denegó una

---

[1] Esta determinación judicial fue notificada y archivada en autos el 2 de diciembre de 2022. Véase Apéndice de *Certiorari*, págs. 93- 96.

Número Identificador:
SEN2023_____

solicitud de desestimación, por prescripción, presentada por **Cape Fear**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 14 de marzo de 2019, los señores **German Suárez Hernández**, **Jackeline Franco Bonilla**, **Luis Alberto Bermúdez Bonilla** y **Sheila Suárez Pérez** (señores **Suárez Hernández**) presentaron una demanda sobre daños y perjuicios contra varias entidades de la corporación AT&T; entre estas, **AT&T Mobility Puerto Rico, Inc. (AT&T)**.[2] Los señores **Suárez Hernández** reclamaron una compensación por los daños sufridos a raíz de un accidente de tránsito ocurrido el 15 de marzo de 2018. Alegaron que mientras transitaban en un vehículo de motor por la carretera núm. 3, a la altura del municipio de Salinas, cayeron en una zanja excavada como parte de unos trabajos que **AT&T** realizaba en el lugar. Ello provocó que el conductor perdiera el control e impactara a otros dos (2) automóviles que viajaban en sentido contrario. Los señores **Suárez Hernández** arguyeron que la excavación no contaba con iluminación, rótulos, vallas de seguridad, zafacones o algún otro dispositivo que alertara de su existencia.

En la *Demanda,* se incluyeron como partes co-demandadas a las contratistas D y F, las que se describieron como "entidades naturales o jurídicas de nombre desconocido que también responde[n] por hacer los trabajos de manera descuidad[a] y negligente [...]", añadiendo que, "[t]an pronto se conozca su identidad se notificará a este Honorable Tribunal".[3]

En algún momento posterior a la presentación de la *Demanda,* los señores **Suárez Hernández** advinieron en conocimiento de que **AT&T** había contratado a la compañía **Mastec North** America, Inc. (**Mastec**) para que realizara los trabajos que dieron lugar al accidente vehicular. Por

---

[2] Véase *Demanda,* Apéndice del *Certiorari,* pág. 1.

[3] *Id.,* pág. 6, inciso núm. 19 de la *Demanda.* En el inciso número 20, a su vez, se alegó lo siguiente: "Compañías de Comunicaciones Y y Z son entidades naturales o jurídicas de nombre desconocido que responde[n] por haber hecho trabajos en el lugar y dejar la excavación sin seguridad. Tan pronto se conozca su identidad se notificará a este Honorable Tribunal".

consiguiente, el 10 de junio de 2019, los señores **Suárez Hernández** presentaron una *Demanda Enmendada* en la cual se notificó que el nombre correcto de la "contratista D" era **Mastec**, e incluyeron como co-demandada a su aseguradora, **Chubb Insurance Company of Puerto Rico**.[4]

El 7 de agosto de 2019, **Mastec** presentó su *Contestación a Demanda Enmendada*.[5] En su alegación responsiva, se limitó a negar la mayoría de las aseveraciones de los señores **Suárez Hernández**, y levantó algunas defensas afirmativas. **Mastec**, sin embargo, no hizo mención alguna de otra compañía subcontratista que hubiera estado realizando trabajos en el lugar y en la fecha del accidente.

Luego, el 24 de octubre de 2019, **Mastec** remitió una misiva a los señores **Suárez Hernández** en la cual expresó:

> Como parte del descubrimiento de prueba, le incluyo información con respecto a varios contratistas de MasTec y que eran quienes estaban realizando los trabajos a los que se refiere la demanda los cuales, alegadamente, son la causa de los da[ñ]os. No le había dado esta información anteriormente porque yo la vine a recibir la semana pasada.[6]

Entre las compañías subcontratadas por **Mastec** se enumeraron a FM Technology Group LLC (FM Technology), **CH Rental LLC (CH Rental)** y **Cape Fear**. **CH Rental** contrató, a su vez, a **MAPFRE PRAICO Insurance Company** (**MAPFRE**), mientras que **Cape Fear** contrató a la aseguradora FCCI.

Con esta nueva información, el 9 de diciembre de 2019, los señores **Suárez Hernández** presentaron una *Segunda Demanda Enmendada*, en la cual incluyeron como co-demandadas a las compañías **Cape Fear**, **CH Rental**, **MAPFRE** y **FM Technology**, y les imputaron haber sido negligentes en la ejecución de los trabajos de construcción que provocaron el accidente.[7]

Por su parte, el 8 de mayo de 2020, **Mastec** presentó *Demandas Contra*

---

[4] Véase *Demanda Enmendada,* Apéndice del *Certiorari,* págs. 8 y 13.
[5] Véase entrada núm. 53 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[6] Véase Apéndice del *Certiorari,* pág. 66.
[7] Véase Apéndice del *Certiorari,* pág. 15. Distinto a la *Demanda Enmendada,* en este escrito no se sustituyó el nombre de un demandado de nombre desconocido por su verdadero nombre, sino que se incluyeron a nuevos co-demandados.

*Coparte* contra **Cape Fear**, **CH Rental**, **MAPFRE** y **FM Technology**. La reclamación contra esta última fue posteriormente desistida tanto por los señores **Suárez Hernández** como por **Mastec**.

Luego de varios incidentes procesales que no ameritan reseña, el 14 de julio de 2020, **CH Rental** y **MAPFRE,** co-demandadas, solicitaron la desestimación de las reclamaciones en su contra al amparo de la Regla 10.2 de las de Procedimiento Civil de 2009, *infra.[8]* Argumentaron que, para el 9 de diciembre de 2020, cuando fueron incluidas en el pleito mediante la *Segunda Demanda Enmendada*, la causa de acción contra **CH Rental** estaba prescrita, y que "la parte Demandante debía conocer, o tomar pasos afirmativos para conocer, quienes eran los alegados responsables del daño [...], antes de que transcurriera el término prescriptivo para este tipo de reclamación".[9]

El 19 de agosto de 2020, los señores **Suárez Hernández** se opusieron a la solicitud de desestimación de **CH Rental** y **MAPFRE**. [10] Fundamentándose en la teoría cognoscitiva del daño, argumentaron que trajeron al pleito a **CH Rental** y **MAPFRE** dentro del término de un (1) año de haber advenido en conocimiento, mediante el descubrimiento de prueba, de la participación de estas compañías en las excavaciones. En la alternativa, arguyeron, además, que en la *Demanda* se incluyeron alegaciones contra **CH Rental** y **MAPFRE**, aunque bajo los nombres ficticios de "Contratistas D & F" y "Compañías aseguradoras A, B & C". En cumplimiento con una orden del tribunal, el 11 de febrero de 2021, **CH Rental** y **MAPFRE** presentaron un memorando de derecho.[11]

El día 21 de mayo de 2021, mediante *Sentencia Parcial* se declaró "ha lugar" el petitorio de **CH Rental** y **MAPFRE**, desestimando así las

---

[8] Véase *Moción de Desestimación,* Apéndice del *Certiorari,* pág. 23.
[9] *Id.,* pág. 24.
[10] Véase *Moción en Oposición a la Desestimación,* Apéndice del *Certiorari,* pág. 29. Junto con el escrito se acompañó la misiva fechada 24 de octubre de 2019 cursada por **Mastec**.
[11] Véase *Moción en Cumplimiento de Orden y Memorando de Derecho en Sustento a Solicitud de Desestimación,* Apéndice del *Certiorari,* pág. 36.

reclamaciones su contra.[12] El foro primario concluyó que los señores **Suárez Hernández** tenían un (1) año a partir de la fecha del accidente para presentar su reclamación; no fue hasta un (1) año y ocho (8) meses después del incidente que estos demandaron a **CH Rental** y **MAPFRE**, y los señores **Suárez Hernández** no demostraron satisfactoriamente "su imposibilidad de ejercer su causa de acción dentro del término prescriptivo estatuido en la ley".[13] Los señores **Suárez Hernández** solicitaron la reconsideración del dictamen, sin éxito.[14]

El 7 de julio de 2021, **Cape Fear** —quien había presentado su *Contestación a Segunda Demanda Enmendada* el 11 de agosto de 2020— solicitó la desestimación por prescripción de la reclamación en su contra.[15] Interponiendo los mismos fundamentos esbozados en la *Sentencia Parcial*, **Cape Fear** alegó que los señores **Suárez Hernández** no demostraron que les fuera imposible ejercer su causa de acción dentro del término prescriptivo de un (1) año, y no evidenciaron las diligencias realizadas para conocer la identidad de las personas o entidades que causaron sus daños antes de la presentación de la *Demanda*.[16]

Por su parte, el 9 de agosto de 2021, los señores **Suárez Hernández** se opusieron a la solicitud de desestimación de **Cape Fear**.[17] Sostuvieron que no fue hasta que recibieron la comunicación fechada 24 de octubre de 2019, como parte del descubrimiento de prueba, que advinieron en conocimiento de que **Mastec** había subcontratado las obras de excavación a otras entidades. Por lo tanto, toda vez que en nuestro ordenamiento rige la teoría cognoscitiva del daño, su causa de acción contra **Cape Fear** no se encontraba prescrita.

El 30 de noviembre de 2021 —notificada el 2 de diciembre de 2021—,

---

[12] Véase *Sentencia Parcial*, Apéndice del *Certiorari*, pág. 48.
[13] *Id.*, pág. 52.
[14] Véanse *Moción de Reconsideración a Sentencia Parcial*, Apéndice del *Certiorari*, pág. 54; y *Notificación*, Apéndice del *Certiorari*, pág. 71.
[15] Véase Apéndice del *Certiorari*, pág. 41.
[16] Véase *Moción de Desestimación*, Apéndice del *Certiorari*, pág. 73.
[17] Véase *Moción en Oposición a la Desestimación*, Apéndice del *Certiorari*, pág. 86.

el foro *a quo* dictó la *Resolución* recurrida, y declaró "no ha lugar" la solicitud de desestimación presentada por **Cape Fear**.[18] En su dictamen, el foro primario consignó lo siguiente:

> Es el descubrimiento de prueba una vía importante para obtener información de distinta naturaleza incluyendo el conocimiento de quienes son los responsables al agraviado. Ello es así, porque no siempre se conocen las partes desde el primer momento de la ocurrencia de los hechos que dan margen a la reclamación. Máxime que los hechos que originan el caso de autos o a las partes a quién se les pudiese imputar responsabilidad civil extracontractual no son necesariamente personas naturales que al momento de los hechos surgiera algún tipo de información que permitiera identificar las mismas. No podemos perder de perspectiva, que las responsabilidades [...] o contractuales entre las partes demandadas son desconocidas por el demandante, salvo que en ocasiones se active o recurra a un razonable descubrimiento de prueba (una vez presentada la demanda y se activen las herramientas procesales y judiciales).
>
> [...]
>
> Siendo un hecho cierto que la parte demandante advino en conocimiento de la existencia de la parte codemandada Cape Fear Utilities, LLC, el 24 de octubre de 2019, luego de ejercitar el esfuerzo de investigación que proveen las reglas en cuanto al descubrimiento de prueba se concluye que la demanda enmendada de Cape Fear no está prescrita [...].

Inconforme, el 17 de diciembre de 2021, **Cape Fear** presentó una *Moción de Reconsideración*.[19] El foro primario mantuvo su determinación, y el 24 de enero de 2021, dictaminó una *Resolución* en la cual declaró "sin lugar" la solicitud de reconsideración presentada por **Cape Fear**.

Aún insatisfecha, el 23 de febrero de 2022, **Cape Fear** acudió ante este Tribunal de Apelaciones mediante recurso de *Certiorari,* y señaló el siguiente error:

> Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al rehusar desestimar la causa de acción contra Cape Fear.

El 14 de marzo de 2022, los señores **Suárez Hernández** presentaron su *Escrito en Cumplimiento de Orden y para Mostrar Causa*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición

---

[18] Véase Apéndice del *Certiorari,* pág. 93.
[19] Véase Apéndice del *Certiorari,* pág. 97.

de resolver. A continuación, exponemos las normas de derecho pertinentes a la controversia planteada.

- II -

A.

El auto de *certiorari* es el vehículo procesal extraordinario disponible para que un tribunal apelativo pueda corregir un error de derecho cometido por un tribunal inferior.[20] "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos".[21] Aun así, nuestra discreción para expedir un auto de *certiorari* no se extiende a cualquier situación procesal, ni abarca todo tipo de materias.

La Regla 52.1 de las de Procedimiento Civil de 2009 delimita las instancias en que este foro apelativo puede revisar vía *certiorari* las resoluciones y órdenes emitidas por los tribunales de primera instancia.[22] En su parte pertinente, dicha Regla dispone lo siguiente (énfasis suplido):

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[23]

---

[20] *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016).

[21] *IG Builders Corp. v. BBVAPR*, 185 DPR 307, 338 (2012).

[22] 32 LPRA Ap. V, R.52.1.

[23] El tratadista Rafael Hernández Colón puntualiza que, aunque "[l]a yuxtaposición de las palabras 'será' y 'podrá' en la R. 52.1, 2009 según aprobada por la Asamblea Legislativa puede crear confusión en cuanto al carácter discrecional de la expedición del auto de *certiorari* respecto a las resoluciones bajo las Reglas 56 y 57 o de las denegatorias de mociones de carácter dispositivo[,] [n]o debe haber duda de que se trata de un recurso discrecional en todos los casos [...]". Véase, Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 532, escolio 31. En *IG Builders Corp. v. BBVAPR*, 185 DPR 307, 338 (2012), el Tribunal Supremo explica que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos".

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que por excepción las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[24] Estos criterios son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es preciso aclarar que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[25] Esto es, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[26] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[27]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando

---

[24] 4 LPRA Ap. XXII-B, R. 40. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008).
[25] *García Morales v. Padró Hernández,* 165 DPR 324, 335 esc. 15 (2005).
[26] *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008).
[27] *Feliberty Padró v. Pizarro Rohena,* 147 DPR 834, 837 (1999).

este último haya incurrido en un craso abuso de discreción.[28] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[29]

La etapa de los procedimientos en que se presenta el recurso objeto de este dictamen es propicia para su consideración, pues se trata de determinar si la causa de acción contra una parte co-demandada está prescrita. Para este análisis, encontramos que la situación de hechos planteada es la más indicada. Más aún, la expedición del recurso no tiene el potencial de causar un fraccionamiento indebido ni una dilación indeseable del litigio. Con ello, se satisfacen al menos tres (3) de los criterios necesarios para mover nuestra discreción a favor de la expedición del auto solicitado.

**B.**

La *prescripción* es una institución que extingue el derecho a ejercitar una causa de acción cuando la parte legitimada deja de hacerlo dentro del término determinado por ley.[30]

"A través de la prescripción, nuestro ordenamiento promueve que las reclamaciones se insten de manera oportuna y que las personas ejerciten sus causas de acción diligentemente".[31] "La prescripción castiga la inercia a la vez que estimula el ejercicio rápido de las acciones. Mientras más cerca de su origen se entablen las reclamaciones, más se asegura que el transcurso del tiempo no confundirá ni borrará el esclarecimiento de la verdad en sus dimensiones de responsabilidad y evaluación de la cuantía".[32]

Esta figura jurídica estaba regulada —para la fecha en que ocurrieron los hechos en el presente caso— por el Artículo 1861 del Código Civil de Puerto Rico de 1930, el cual dispone que "[l]as acciones prescriben por el mero

---

[28] *García Rubiera v. Asociación de Suscripción Conjunta,* 165 DPR 311, 322 (2005).
[29] *Lluch v. España Service Station,* 117 DPR 729, 745 (1986).
[30] *Rivera Ruiz v. Municipio Autónomo de Ponce,* 196 DPR 410, 415 (2016); *Fraguada Bonilla v. Hospital Auxilio Mutuo,* 186 DPR 365, 372-373 (2012).
[31] *Maldonado Rivera v. Suárez,* 195 DPR 182, 192 (2016).
[32] *Campos Ledesma v. Compañía de Fomento Industrial de PR,* 153 DPR 137, 143 (2001).

lapso del tiempo fijado por la ley".[33]   Un término prescriptivo puede interrumpirse de tres (3) maneras: la correspondiente acción judicial; una reclamación extrajudicial; y por el reconocimiento de la deuda por parte del deudor.[34] "Una vez se interrumpe la prescripción, el término prescriptivo comienza a transcurrir nuevamente".[35] La *prescripción* extintiva es una figura de naturaleza sustantiva, la cual se rige por los principios del Código Civil.[36] No obstante, en el ámbito procesal "la prescripción es una defensa afirmativa que debe plantearse de forma expresa y oportuna, o de lo contrario se entiende renunciada".[37]

La causa de acción que provee el Artículo 1802 del Código Civil de Puerto Rico de 1930 para exigir la reparación de un daño extracontractual causado por culpa o negligencia, tiene un término prescriptivo de un (1) año.[38] "[L]a brevedad de este término responde a que el legislador quiso dotar de mayor certeza una relación que generalmente carece de ella debido a la inexistencia de un vínculo previo entre las partes y el desconocimiento de la extensión de la obligación".[39]

En nuestro ordenamiento jurídico rige la teoría cognoscitiva del daño.[40] Según esta, por consideraciones de justicia, se estima que el término prescriptivo para el ejercicio de estas acciones no comienza en el instante en que objetivamente ocurre el daño, sino desde que se conocen los otros elementos necesarios para poder ejercer la acción.[41] Así se desprende del Artículo 1868 del Código Civil de Puerto Rico de 1930 el cual establece que el término prescriptivo de una acción de daños y perjuicios comienza a decursar

---

[33] 31 LPRA ant. sec. 5291.
[34] Artículo 1873 del Código Civil de PR de 1930, 31 LPRA ant. sec. 5303. Artículo 1873 del Código Civil de PR de 1930, 31 LPRA ant. sec. 5303. Artículo 1873 del Código Civil de PR de 1930, 31 LPRA ant. sec. 5303.
[35] *Maldonado Rivera v. Suárez, supra,* pág. 193.
[36] *Fraguada Bonilla v. Hospital Auxilio Mutuo, supra,* pág. 373.
[37] *Menéndez Guzmán v. Berríos López,* 172 DPR 1010, 1017 (2008).
[38] 31 LPRA ant. sec. 5141.
[39] *Maldonado Rivera v. Suárez, supra,* pág. 194.
[40] *Id.,* pág. 212.
[41] *COSSEC v. González López,* 179 DPR 793, 806 (2010); *Vega Lozada v. J. Pérez & Cía, Inc.,* 135 DPR 746, 754 (1994).

"desde que lo supo el agraviado".[42] "[N]o puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla".[43] Empero, "si el desconocimiento que impide ejercer la acción se debe a la falta de diligencia del reclamante, entonces no son aplicables las aludidas consideraciones [...] sobre la prescripción."[44] En consideración de lo anterior, se impone la norma de que "el término prescriptivo para exigir responsabilidad por un daño extracontractual comienza a transcurrir cuando el perjudicado conoció —o *debió conocer de haber procedido diligentemente*— la existencia del daño, quién lo causó, *así como los elementos necesarios para ejercer efectivamente la causa de acción".[45]* "Los tribunales tienen el deber de determinar, atendidas las circunstancias particulares de cada caso, si el perjudicado ejerció la diligencia de un hombre razonable y prudente [...] para identificar lo más pronto posible la existencia de un daño, para efectos del comienzo del transcurso del plazo prescriptivo [...]".[46]

Esto se conoce como la norma de conocimiento imputado.[47] Por lo tanto, el perjudicado que alegue que conoció del daño sufrido en un momento posterior al de su ocurrencia "debe probar que un hombre prudente y razonable, por razón de las circunstancias particulares del caso, no habría podido descubrir la consecuencia lesiva hasta el momento en que él la conoció".[48] De esta forma, "el perjudicado tiene la carga de la prueba en cuanto a cuándo fue que tuvo conocimiento de la consecuencia lesiva, o en su caso, de cuándo debió obtenerlo".[49]

De otra parte, cuando existen dos (2) o más cocausantes de un daño, todos responden de forma solidaria ante la persona perjudicada.[50] En estos

---

[42] 31 LPRA ant. sec. 5298. Similarmente, el Artículo 1869 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5299, dispone (énfasis suplido): "El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará *desde el día en que pudieron ejercitarse"*.

[43] *Vega Lozada v. J. Pérez & Cía, Inc., supra*, págs. 754-755.

[44] *Id.*, pág. 755.

[45] *Maldonado Rivera v. Suárez, supra,* pág. 212 (énfasis suplido).

[46] *Vera Morales v. Dr. Bravo Colón,* 161 DPR 308, 330 (2004).

[47] H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* 2da. ed., San Juan, Puerto Rico, Publicaciones JTS, Inc., 1986, Vol. I, pág. 440.

[48] *Id.*

[49] *Id.*, citado con aprobación en *Vera Morales v. Dr. Bravo Colón, supra,* pág. 326.

[50] *Cubano v. Jiménez,* 32 DPR 167, 170 (1923).

casos, "la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes [...]".[51] Por ende, cuando existen cocausantes de un daño, el perjudicado "deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil, si interesa conservar su causa de acción contra cada uno de ellos".[52]

De forma similar, "[u]n cocausante demandado no puede traer al pleito mediante demanda contra tercero a un presunto cocausante solidario con respecto a quien la causa de acción del perjudicado prescribió".[53] "Prescrita a su favor la causa de acción, ese alegado cocausante no está sujeto a responderle al perjudicado ni tampoco, mediante una acción de nivelación, a los cocausantes demandados".[54] En estos casos, "[s]i después de celebrado el juicio el tribunal concluyera que el presunto cocausante que no fue demandado a tiempo en efecto contribuyó a producir el daño, el por ciento de responsabilidad que se le atribuya se descontará de la indemnización del perjudicado".[55]

La norma anterior es consistente con la teoría cognoscitiva del daño. Consecuentemente, "si mediante el descubrimiento de prueba u otro medio el agraviado conoce de la existencia de otro coautor y del resto de los elementos necesarios para reclamarle, el término prescriptivo contra ese alegado cocausante comenzará a transcurrir en ese momento".[56]

## C.

"En nuestra jurisdicción, los derechos y obligaciones adjudicados mediante un dictamen judicial, que adviene final y firme, constituyen *ley del caso*".[57] Estas determinaciones que han sido adjudicadas por el foro primario

---

[51] *Fraguada Bonilla v. Hospital Auxilio Mutuo, supra*, pág. 389.
[52] *Íd., supra*, pág. 389 (citas omitidas).
[53] *Maldonado Rivera v. Suárez, supra*, pág. 211.
[54] *Id.*
[55] *Id.*, pág. 212.
[56] *Fraguada Bonilla v. Hospital Auxilio Mutuo, supra*, pág. 390.
[57] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 8 (2016).

o por un tribunal apelativo dentro de un mismo proceso, como regla general, obligan tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración.[58] En específico, las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal.[59] Ahora bien, "[m]ás que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales".[60] " Por el contrario, [la doctrina] es descartable si conduce a resultados manifiestamente injustos".[61] Por consiguiente, "[e]n situaciones excepcionales, si el caso vuelve ante la consideración del tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, ese foro puede aplicar una norma de derecho distinta".[62]

### D.

La Regla 10.3 de las de Procedimiento Civil de 2009—moción para que se dicte sentencia por las alegaciones— "regula el procedimiento que se ha de seguir en cuanto a una moción de desestimación presentada después de haberse notificado todas las alegaciones".[63] Procede dictar sentencia por las alegaciones "cuando de estas surge que no existe controversia sustancial de hechos, haciendo innecesario la celebración de un juicio en su fondo para recibir o dilucidar la prueba.[64] La moción se considerará, no a base de prueba alguna, sino aplicando el derecho a lo que está expuesto en las alegaciones.[65]

"[E]l estándar aplicable al adjudicar una moción para que se dicte sentencia por las alegaciones es idéntico al que se utiliza ante una moción de desestimación fundamentada en que la demanda deja de exponer una

---

[58] *Cacho Pérez v. Hatton Gotay, supra,* pág. 9.

[59] *Félix Taveras v. Las Haciendas, SE,* 165 DPR 832, 843 (2005).

[60] *Management Administration Services Corp. v. ELA,* 152 DPR 599, 607 (2000).

[61] *Id.,* pág. 608.

[62] *Cacho Pérez v. Hatton Gotay, supra,* pág. 9.

[63] 32 LPRA Ap. V, R. 10.3. *Montañez v. Hospital Metropolitano,* 156 DPR 96 (2002), págs. 101-102.

[64] *Id.,* pág. 102.

[65] Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 312.

reclamación que justifique la concesión de un remedio".[66]  Ello es así, pues ambas mociones se dirigen a los méritos de la controversia y no a los aspectos procesales del caso.[67]

Al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, "los tribunales deben tomar como ciertos todos los hechos bien alegados de la demanda y que hayan sido aseverados de manera clara y concluyente."[68] No obstante, mientras que los hechos y alegaciones de la demanda se considerarán como ciertos, "aquellos de la contestación a la demanda se estimarán ciertos sólo en lo que no estén en conflicto con la demanda".[69]  La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[70]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[71]  De esta forma, solo procederá una moción de desestimación cuando la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[72]  Asimismo amerita tener en cuenta que "**[n]o procede la desestimación definitiva de una demanda por dejar de exponer la misma hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada**".[73]

---

[66] *Montañez v. Hospital Metropolitano, supra,* págs. 103-104.

[67] *Id.,* pág. 104.

[68] *González Méndez v. Acción Social de PR,* 196 DPR 213, 234 (2016).

[69] *Montañez v. Hospital Metropolitano, supra.*

[70] José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 529, citado en *Asociación Puertorriqueña de Importadores de Cerveza, Inc. v. ELA,* 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad).

[71] *González Méndez v. Acción Social de PR, supra,* pág. 234; *Montañez v. Hospital Metropolitano, supra,* pág. 103.

[72] *Ortiz Matías v. Mora Development Corp.,* 187 DPR 64, 65 (2013); *Montañez v. Hospital Metropolitano, supra,* pág. 105.

[73] *Clemente González v. Departamento de la Vivienda,* 114 DPR 763, 771 (1983) (énfasis suplido); véase, además, *Figueroa v. Tribunal Superior,* 88 DPR 122, 124 (1963).  En *Figueroa*

En suma, el criterio al adjudicar esta moción de desestimación no es si la parte demandante va a prevalecer finalmente, sino si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados de la demanda.[74] Por último, es preciso apuntar que cuando en la moción de desestimación se exponen materias no contenidas en la demanda, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria, y estará sujeta a todos los trámites aplicables.[75]

## - III -

Son dos (2) los argumentos principales que desarrolla **Cape Fear** en apoyo de su pretensión. De un lado, es enfática en señalar la inconsistencia entre los resultados de la *Sentencia Parcial* determinada el 21 de mayo de 2021 y la *Resolución* recurrida pronunciada el 24 de enero de 2022. En el primero de estos dictámenes, bajo circunstancias muy similares a las del presente caso, el foro primario desestimó la causa de acción contra **CH Rental** y **MAPFRE** por entender que estaba prescrita. No obstante, en la segunda decisión, el tribunal concluyó que los señores **Suárez Hernández** interrumpieron oportunamente el término prescriptivo frente a **Cape Fear**. Esta incongruencia es descrita de la siguiente forma por **Cape Fear**:

> [S]in decirlo, el Honorable Tribunal de Primera Instancia resolvió que las diligencias realizadas por la parte demandante para conocer la relación de CH Rental y Mapfre no cumplieron con las exigencias de la teoría cognoscitiva del daño, pero sí fueron suficientes para evitar la desestimación por prescripción de la causa de acción contra Cape Fear.[76]

Por ende, **Cape Fear** argumenta que la *Resolución* recurrida violenta la *doctrina de la ley del caso* por ser incompatible con lo resuelto previamente

---

*v. Tribunal Superior, supra,* se expresa: "Una demanda debe desestimarse en definitiva porque no aduce causa de acción sólo cuando la razón de pedir no procede bajo supuesto alguno de derecho concebible, y por lo tanto, la misma no es susceptible de ser enmendada".

[74] José A. Segarra, *op. cit.,* pág. 530.

[75] Regla 10.2 de las de Procedimiento Civil de 2009, *supra.* Según se ha interpretado la equivalente federal de nuestra regla (subrayado nuestro):
   *A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.*
   *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir. 1996).

[76] *Véase Certiorari,* pág. 7.

mediante la *Sentencia* pronunciada el 21 de mayo de 2021, y sostiene que, a fin de evitar una gran injusticia, el Tribunal de Primera Instancia debió acoger su solicitud de desestimación por prescripción. De entrada, advertimos que el peso del argumento de **Cape Fear** se sostiene en la premisa de que, entre los dictámenes contradictorios del foro *a quo,* el correcto es el de la *Sentencia Parcial* intimada el 21 de mayo de 2021.

En segundo lugar, **Cape Fear** argumenta que los señores **Suárez Hernández** no desempeñaron el nivel de diligencia que se espera de una parte demandante para conocer la identidad de los cocausantes de un daño. Así, **Cape Fear** señala que los señores **Suárez Hernández** nunca informaron sobre las gestiones que llevaron a cabo antes de presentar su reclamación para conocer quiénes le causaron sus daños, y esperaron innecesariamente hasta el descubrimiento de prueba para indagar sobre las subcontratistas de **AT&T**.

**Cape Fear** presentó una solicitud para que se desestimara la causa de acción presentada en su contra por el fundamento de *prescripción*. Como dicha moción se presentó *luego* de notificadas todas las alegaciones responsivas, pero antes de que se presentara la prueba, ella debe ser considerada como una solicitud para que se dicte sentencia por las alegaciones.[77] De este modo, solo procederá la desestimación cuando la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[78]

Según la teoría cognoscitiva del daño que rige en nuestro ordenamiento, el término prescriptivo de una acción de daños y perjuicios inicia "cuando el perjudicado conoció —o debió conocer de haber procedido diligentemente— la existencia del daño, quién lo causó, así como los elementos necesarios para ejercer efectivamente la causa de acción".[79] Lo anterior supone que el perjudicado debe emplear la diligencia de un hombre

---

[77] *Montañez v.Hospital Metropolitano, supra,* pág. 105.
[78] *Id.,* pág. 105; *Ortiz Matías v. Mora Development Corp., supra,* pág. 65.
[79] *Maldonado Rivera v. Suárez, supra,* pág. 212.

prudente y razonable para identificar la existencia de un daño y la identidad del causante o los cocausantes.[80]

Como es sabido, "[l]a diligencia exigible es función de la previsibilidad de las consecuencias dañosas y de la capacidad de prever que de un hombre prudente y razonable se pueda esperar *ante las circunstancias de la situación de hechos en cuestión".[81]* El hombre o mujer prudente y razonable "es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución *exigidos por las circunstancias*".[82]

En otros casos, en donde la controversia también ha girado en torno al nivel de diligencia que se espera de una parte demandante para investigar la identidad de todos los cocausantes de un daño, ha resultado determinante el hecho de que existían informes y documentos de los cuales surgía la identidad de los presuntos cocausantes, y a los cuales los perjudicados pudieron haber accedido con razonable facilidad en, o cerca, del momento en que ocurrió el daño.[83]

En el presente caso, según lo antes expuesto, los señores **Suárez Hernández** podrían alegar y demostrar ante el Tribunal de Primera Instancia que sus circunstancias son tales que no debe exigírseles conocimiento especial sobre el entramado de relaciones contractuales, de contratistas y subcontratistas, que suelen acompañar las gestiones de compañías multinacionales como **AT&T**. Igualmente, podrían argüir y probar que no tuvieron acceso, antes de presentar su reclamación, a algún informe o documento del que surgieran los nombres de las contratistas y subcontratistas envueltas en la excavación de **AT&T**. De este modo, podrían alegar y evidenciar —tal como alegaron ante el foro primario en su moción en oposición a la desestimación— que conocieron del nombre de **Cape Fear**

---

[80] Véase *Vera Morales v. Dr. Bravo Colón, supra,* pág. 330.

[81] Brau del Toro, *op. cit.,* pág. 440 (énfasis suplido).

[82] *Pons Anca v. Engerbretson,* 160 DPR 347, 355 (2003) (énfasis suplido).

[83] Véanse *Fraguada Bonilla, supra; Vera Morales, supra;* y por su valor persuasivo, *Dingui Díaz v. Hospital Ryder Memorial Inc.,* KLAN201701114 (sentencia de 26 de febrero de 2018); *Dávila Correa v. Rodríguez Pérez,* KLAN201001862 (sentencia del Tribunal de Apelaciones de 30 de junio de 2011).

por primera vez, en medio del descubrimiento de prueba, mediante la divulgación que hizo **Mastec** en su misiva con fecha de 24 de octubre de 2019, por lo que interrumpieron, oportunamente, el término prescriptivo de la acción contra **Cape Fear**, de conformidad con la teoría cognoscitiva del daño.

Los señores **Suárez Hernández** le reclamaron a **Cape Fear** por primera vez en la *Segunda Demanda Enmendada* instada el 9 de diciembre de 2019. En esta, sin embargo, no se incluyeron alegaciones respecto al momento y las circunstancias en que estos advinieron en conocimiento de la identidad de **Cape Fear** y de su participación en la excavación que provocó el daño. No fue hasta que presentaron su oposición a la desestimación interpelada por **CH Rental** y **MAPFRE**, que los señores **Suárez Hernández** alegaron por primera vez que se habían enterado de la identidad de **Cape Fear** el 24 de octubre de 2019, por medio de la antedicha comunicación cursada por **Mastec**, copia de la cual anejaron a su petitorio.

Si bien al adjudicar una moción de desestimación como la de autos solo se consideran las alegaciones de la demanda, "[n]o procede la desestimación definitiva de una demanda por dejar de exponer la misma hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada". [84] Luego de haberse presentado una alegación responsiva —como en el presente caso— "las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria". [85] No obstante lo anterior, "el permiso se concederá liberalmente cuando la justicia así lo requiera".[86]

Finalmente, no es de aplicación aquí la *doctrina de la ley del caso*. En la *Sentencia Parcial* dictada el 21 de mayo de 2021 —mediante la cual se desestimó la causa de acción en cuanto a **CH Rental** y **MAPFRE**— no se adjudicaron derechos ni obligaciones entre los señores **Suárez Hernández**

---

[84] *Clemente González v. Departamento de la Vivienda, supra,* pág. 771.
[85] Regla 13.1 de las de Procedimiento Civil de 2009, *supra.*
[86] *Id.*

y la **Cape Fear**. En cualquier caso, conviene recordar que el tribunal tenía la facultad para aplicar una norma de derecho distinta, o variar la aplicación de la misma norma, ante el convencimiento de que la determinación previa era errónea y de que su reiteración podía causar una grave injusticia.[87] Al día de hoy, la *Sentencia Parcial* emitida el 21 de mayo de 2021 advino final y firme sin que los señores **Suárez Hernández** presentarán alguna revisión ante esta instancia apelativa. Resolvemos, por consiguiente, que no se equivocó el foro primario al denegar la solicitud de desestimación de **Cape Fear**.

- **IV**-

Por los fundamentos expuestos, *expedimos* el auto de *certiorari*; *confirmamos* la *Resolución* recurrida dictaminada el 30 de noviembre de 2021; y ordenamos la continuación de los procedimientos ante el Tribunal de Primera Instancia de manera compatible con lo aquí dispuesto.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[87] *Cacho Pérez v. Hatton Gotay, supra,* pág. 9.