Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PLATINUM EMERGENCY GROUP, INC.<br><br>Recurrido<br><br>V.<br><br>VÍCTOR RAMOS, VIVIANETTE MENÉNDEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ESTOS, HEALTH PREVENTIVE AND EMERGENCY SERVICES, PSC; JOHN DOE; JOE SMITH; COMPAÑÍAS X, Y, Z<br><br>Peticionarios | KLCE202400412 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020CV03260<br><br>Sobre: Incumplimiento de Contrato y Resarcimiento en Daños, Interferencia Torticera con Relaciones Contractuales |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 9 de mayo de 2024.

-I-

Comparece Health Preventive and Emergency Services, P.S.C., (HPES o peticionario) y solicita que revisemos una *Resolución* emitida el 21 de febrero de 2024 por el Tribunal de Primera Instancia, Sala de Bayamón (TPI).[1] En el referido dictamen, el TPI declaró No Ha Lugar a una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, presentada por HPES ante la *Demanda* que incoó Platinum Emergency Group, Inc. (PEG o recurrido) en su contra.

---

[1] Apéndice de *Certiorari*, Anejo 1, págs. 001-010. Archivada y notificada el 22 de febrero de 2024. El 8 de marzo de 2024, HPES solicitó reconsideración, la cual el TPI declaró No Ha Lugar mediante una *Resolución* emitida el 9 de marzo de 2024, archivada y notificada el 11 de marzo de 2024.

Luego de considerar los planteamientos esbozados por ambas partes, resolvemos denegar la expedición del auto de *certiorari*. Veamos el trasfondo fáctico y procesal atinente a este recurso.

-II-

La controversia ante nuestra consideración tiene su origen el 10 de octubre de 2020, cuando PEG presentó una *Demanda* sobre incumplimiento de contrato y resarcimiento de daños contra Víctor Ramos, Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos, Alejandro Cabrera, Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos; además, de otros demandados.[2] En esta, PEG arguyó que se dedicaba a proveer servicios médicos en diversas facilidades de salud en Puerto Rico. Adujo que desde el año 2017, mantenía una relación contractual con Salud Integral de la Montaña, Inc. (SIM), para que PEG proveyera los médicos en las salas de emergencias de SIM en Barranquitas y Orocovis. Alegó que el 30 de septiembre de 2019, suscribió un *Contrato de Servicios Profesionales* con SIM, vigente hasta el 31 de octubre de 2020. Sostuvo que el 15 de noviembre de 2019, el doctor Alejandro M. Cabrera Pereles (Dr. Cabrera) suscribió un *Contrato de Servicios Médicos* con su corporación. PEG esgrimió que, por virtud del referido *Contrato de Servicios Médicos*, el Dr. Cabrera se comprometió a no participar, asesorar, negociar, emplearse, contratar para la prestación de servicios médicos similares ni intervenir directa o indirectamente con los negocios, las entidades ni el personal en competencia con el negocio o servicio prestado por el recurrido, durante la vigencia del contrato y un término adicional de doce (12) meses. A su vez, aseveró que el Dr. Cabrera se comprometió a no revelar información confidencial, sin el previo consentimiento escrito de PEG.

---

[2] *Íd.*, Anejo 4, págs. 019-027.

Además, PEG alegó que el 25 de febrero de 2020, el señor Víctor A. Ramos González (Sr. Ramos) suscribió un *Non-Disclosure Agreement* (NDA) con su corporación, en el cual el Sr. Ramos se comprometió a proteger y no divulgar o utilizar información confidencial compartida por PEG sobre las siguientes transacciones:

> (a) transacciones potenciales de interés mutuo para [PEG] y [el Sr. Ramos]; (b) las finanzas, estructuras financieras y metodología utilizada por [PEG]; (c) políticas corporativas, prácticas comerciales, planes de negocio y documentación de [PEG]; (d) acuerdos de negocios, contratos y transacciones ejecutadas por [PEG]; (e) activos, inmuebles, facilidades, sistemas, equipos, productos y tecnología de [PEG]; (f) mecánicas y métodos de costos ("*pricing*") y estrategias de [PEG]; (g) y cualquier otra información adicional relativa a los programas, la plataforma, la propiedad y los servicios que provee [PEG].

PEG adujo que el 15 de julio de 2020, SIM emitió una petición para que en o antes del 31 de julio de 2020 se sometieran propuestas para el servicio de cubiertas médicas en las salas de emergencias en Barranquitas y Orocovis. El recurrido aseveró que presentó su propuesta y posteriormente advino en conocimiento que el Sr. Ramos, como Administrador de HPES, junto al Dr. Cabrera, como su Presidente, presentaron una propuesta en representación de HPES. PEG manifestó que el Sr. Ramos utilizó información confidencial para competir en la obtención del contrato de servicios de cubiertas médicas. Especificó que SIM otorgó el contrato sobre la sala de emergencias de Orocovis a PEG y la de Barranquitas a HPES.

El recurrido expuso que le envió cartas al Sr. Ramos y al Dr. Cabrera para que cesaran y desistieran utilizar y/o compartir la información confidencial y violentar el NDA y *Contrato de Servicios Médicos*, respectivamente. Además, le solicitó que retiraran la propuesta de SIM por ser producto del uso ilegal de una información obtenida confidencialmente.

PEG señaló que, por información y creencia, HPES se aprestaba a suscribir un contrato con SIM para proveer servicios

profesionales en la sala de emergencias de Orocovis. Por ello, solicitó que se ordenara a las partes al cumplimiento estricto del NDA y del *Contrato de Servicios Médicos*, el pago de las sumas reclamadas en la *Demanda*, entre otros remedios.

El 15 de marzo de 2021, PEG y el Dr. Cabrera presentaron una *Moción de desistimiento por estipulación*, mediante la cual el recurrido desistió con perjuicio la *Demanda* contra el Dr. Cabrera.[3] En virtud de una *Sentencia parcial* emitida y notificada el 16 de marzo de 2021, el TPI ordenó el archivo con perjuicio de la causa de acción instada en contra del Dr. Cabrera.[4]

El 23 de diciembre de 2022, PEG presentó una *Moción en solicitud de permiso para enmendar la demanda*.[5] En lo que nos concierne, el recurrido apuntó que, a un año y medio más tarde de instarse la demanda, tras el descubrimiento de prueba, advino en conocimiento que el Sr. Ramos presentó y firmó las propuestas de HPES al SIM once (11) días después de formalizar la empresa y recibía una iguala por el contrato con SIM en Barranquitas, entre otros actos. PEG expuso que, a la luz de la evidencia recién obtenida, el Sr. Ramos utilizó información confidencial suya para presentar la propuesta de servicios médicos al SIM, por lo que HPES debía añadirse como cocausante del daño ocasionado a su corporación.

No obstante, el 19 de enero de 2023, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de enmendar la *Demanda*, tras la avanzada etapa del litigio.

No conforme, el 28 de febrero de 2023, PEG acudió ante esta Curia apelativa mediante el recurso KLCE202300193. El 20 de abril de 2023, este Tribunal emitió una *Sentencia* en la que revocó la determinación recurrida, puesto que el TPI debía permitir la

---

[3] *Íd.*, Anejo 5, págs. 028-029.
[4] *Íd.*, Anejo 6, págs. 030-030a.
[5] Apéndice de *Oposición a certiorari*, Anejo 13, págs. 376-387.

enmienda solicitada. Esto, debido a que al momento de solicitarse la enmienda a la *Demanda* no se había celebrado la conferencia con antelación al juicio, la dilación de PEG no ameritaba denegar el permiso, más su propósito era que HPES respondiera solidariamente por intervención torticera con relación a los mismos hechos alegados en la *Demanda*. Este Tribunal apelativo dispuso que "**ordenamos a [PEG] a someter la demanda enmendada cuya autorización solicitó[,] dentro de los diez (10) días siguientes a la notificación de esta *Sentencia*. Esta enmienda se limitará a añadir como codemandada en el pleito a [HPES], e incluir alegaciones específicas contra dicha parte**". (Énfasis nuestro).

Tras varios trámites procesales, el 1 de mayo de 2023, PEG presentó una *Demanda enmendada* para incorporar a HPES como codemandado por interferencia torticera.[6] En esencia, precisó que el Sr. Ramos, en violación a sus deberes y obligaciones pactadas en el NDA, vigente al momento de los hechos, divulgó información confidencial suya al Dr. Cabrera y a HPES para redactar la propuesta de servicios médicos para las facilidades del SIM en Barranquitas y Orocovis, conforme con los planes de negocios, las métricas y los métodos de costos "*pricing*" de PEG. Por último, reclamó que el Sr. Ramos le respondía por su violación contractual, mientras que HPES por responsabilidad extracontractual e interferencia torticera con la relación contractual entre el Sr. Ramos y PEG.

El 12 de enero de 2024, HPES presentó una *Moción de desestimación a tenor con la Regla 10.2 de Procedimiento Civil*.[7] Mediante esta, puntualizó que de las alegaciones de la *Demanda enmendada* no surgían los elementos de la causa de acción de interferencia torticera dado que PEG no tenía un contrato vigente con SIM. Arguyó que SIM, dentro de sus prerrogativas y sin que existiera

---

[6] Apéndice de *Certiorari*, Anejo 7, págs. 031-043.
[7] *Íd.*, Anejo 8, págs. 044-057.

una maquinación insidiosa con HPES, decidió peticionar propuestas para sustituir el contrato con PEG, por lo que el futuro contrato con PEG era una mera expectativa. Por otro lado, apuntó que dado que la causa de acción era de índole extracontractual estaba prescrita, debido a que la *Demanda enmendada* se presentó fuera del año desde que se concretó el daño al HPES presentar la propuesta al SIM y la firma del contrato que interfirió con el suyo. Por ello, determinó que la *Demanda enmendada* carecía de alegaciones plausibles en su contra, por lo que no se justificaba la concesión de un remedio en su contra.

En oposición a la solicitud de desestimación, el 31 de enero de 2024, PEG planteó que la causa de acción contra HPES por interferencia torticera era referente a la relación contractual entre PEG y el Sr. Ramos por virtud del NDA, mas no por la relación contractual entre PEG y SIM.[8] Estableció que durante la vigencia del NDA, el Sr. Ramos recolectó información confidencial de la operación de PEG para presentar una propuesta y asegurar contratos como Administrador y en representación de HPES. Manifestó que las propuestas de HPES para las facilidades del SIM en Barranquitas y Orocovis se nutrió de la información protegida por el NDA, por lo que, a sabiendas, HPES interfirió con el acuerdo de no divulgación. Expuso que HPES tenía pleno conocimiento de la existencia del contrato entre el Sr. Ramos y PEG, su actuación fue intencional y sabía que le causaría daño a PEG. En torno al término prescriptivo, concretó que, a tenor con la teoría cognoscitiva del daño, el término comienza a decursar desde que el perjudicado conoce que sufrió un daño y quién es el responsable. Subrayó que no fue hasta el 2 de agosto de 2022 que se enteró que el Sr. Ramos era el Administrador

---

[8] *Íd.*, Anejo 9, págs. 058-072.

de HPES, puesto que el Dr. Cabrera y el Sr. Ramos presuntamente negaron dicha información.

El 21 de febrero de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la solicitud de desestimación de HPES.[9] El Foro Primario determinó que de los hechos hay suficientes alegaciones y prueba para establecer que HPES intervino indebidamente con la relación contractual de PEG con el Sr. Ramos mediante el NDA y pudo perjudicar económicamente a PEG. Por otro lado, consignó que la *Demanda enmendada* no estaba prescrita, puesto que el 2 de agosto de 2022 fue el día en que PEG pudo confirmar la relación entre el Sr. Ramos con HPES, por lo que la *Demanda enmendada* se presentó dentro del término de un año.

Inconforme, el 8 de marzo de 2024, HPES peticionó una reconsideración,[10] la cual el TPI declaró No Ha Lugar mediante una *Resolución* emitida el 9 de marzo de 2024.[11]

Insatisfecho con la determinación del Foro Primario, HPES acudió ante nos y señaló que el TPI cometió los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN Y DETERMINAR QUE LA DEMANDA ENMENDADA NO ESTÁ PRESCRITA.

> **SEGUNDO ERROR:** ERRÓ EL TPI AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN, TODA VEZ QUE QUEDÓ DEMOSTRADO QUE EL RECURRIDO NO PRESENTÓ ALEGACIONES SUFICIENTES PARA UNA CAUSA DE ACCIÓN EN DAÑOS NI INTERFERENCIA CONTRACTUAL TORTICERA.

En síntesis, HPES sostuvo que, desde el 9 de septiembre de 2020, PEG sabía que existía una propuesta de su corporación que presuntamente era producto del uso ilegal de una información confidencial, dado que, en dicho momento, SIM aceptó la propuesta del peticionario. Por otro lado, alegó que la *Demanda enmendada* carece de alegaciones plausibles y que el TPI utilizó información

---

[9] *Íd.*, Anejo 1, págs. 001-010. Archivada y notificada el 22 de febrero de 2024.
[10] *Íd.*, Anejo 2, págs. 011-017.
[11] Anejo 3, págs. 018-018a. Archivada y notificada el 11 de marzo de 2024.

extrínseca a las alegaciones para favorecer a PEG. A saber, destacó que el NDA entre el Sr. Ramos y PEG no se canceló ni se dejó sin efecto y que en la *Demanda enmendada* no se demostró que HPES tuvo la intención de interferir con dicho contrato ni el daño causado.

Por su parte, el 25 de abril de 2024, PEG presentó su *Oposición a certiorari*. En esencia, estableció que el asunto en controversia fue previamente adjudicado y objeto de una *Sentencia* emitida por esta Tribunal en el recurso KLCE202300193, la cual advino final y firme. Por otro lado, en lo atinente a los méritos del recurso, PEG sostuvo que, de un examen a la *Demanda enmendada*, se desprende que presentó varias alegaciones específicas sobre la interferencia torticera de HPES en la relación contractual entre PEG y el Sr. Ramos. Así, pues, esgrimió que no se configuraron los elementos que harían prosperar una moción de desestimación. Con respecto a la prescripción, el recurrido adujo que presentó la *Demanda enmendada* dentro del año desde que conoció la actuación de HPES en interferir con las obligaciones contractuales entre el Sr. Ramos y PEG, más los daños cuantificables que dicha conducta le causó.

En atención a los errores señalados por el peticionario, pormenorizamos la normativa jurídica pertinente a este recurso.

-III-

-A-

El *certiorari* es un recurso extraordinario cuya característica se asienta en la sana discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las

instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que sólo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunction* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo". *800 Ponce de León v. AIJ, supra.* Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

A tenor con estos criterios, como foro revisor, tenemos la obligación de obrar con discernimiento judicial en nuestra intervención para no interrumpir a destiempo el trámite ante el tribunal de instancia. *Torres Martínez v. Torres Ghigliotty, supra*, pág. 98. De esta forma, de no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari.*

-B-

La Regla 10.2 de Procedimiento Civil, *supra,* R. 10.2, enumera los fundamentos por los que se permite la desestimación de la demanda como, entre otros, dejar de exponer una reclamación que justifique la concesión de un remedio. Al evaluar una solicitud de desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio, el tribunal debe tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); Véase también *Costas Elena y otros v. Magic Sport y otros*, 2024 TSPR 13, 213 DPR __ (2024); *Colón Gorbea v. Sánchez Hernández et al.*, 202 DPR 760, 765 (2019); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Una demanda solo debe tener una relación suscita y sencilla de los hechos demostrativos de que la parte demandante tiene derecho a un remedio. Véase Regla 6.1 de Procedimiento Civil, *supra*, R. 6.1. No obstante, en este ejercicio no se presumirán como ciertas las conclusiones legales ni los elementos de la causa de acción apoyados por aseveraciones conclusorias. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 307.

Posteriormente, el tribunal debe determinar si, en virtud de los hechos bien alegados en la demanda, existe una reclamación plausible que justifique que la parte demandante tiene derecho a un remedio, a la luz de la experiencia y el sentido común. *Íd.* Así, la desestimación se centra en los méritos de la controversia, no en su aspecto procesal. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 83 (2023); *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002). Al efecto, las alegaciones se evalúan conjuntamente para auscultar si la demanda es suficiente para constituir una reclamación válida, a la luz de la situación más favorable para la parte demandante, resolviendo toda duda a su favor. *Costas Elena y otros v. Magic Sport*

*y otros, supra.* Es decir, la parte peticionaria debe demostrar de forma certera que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho. *Eagle Security v. Efrón Dorado et al., supra,* pág. 84; *Ortiz Matías et al., v. Mora Development,* 187 DPR 649, 654 (2013). Esto, dado que privar a una persona litigante de su día en corte sólo procede en casos extremos. *Íd.* No obstante, de no cumplirse con el estándar de plausibilidad, el tribunal debe desestimar la demanda. Pues, no se puede permitir una demanda insuficiente ante el pretexto de probar las alegaciones conclusorias en el descubrimiento de prueba. Hernández Colón, *op cit.* Empero, la demanda no debe desestimarse si es susceptible a enmendarse. *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 429.

-C-

En nuestro ordenamiento jurídico se permite instar una acción en daños por interferencia culposa con las obligaciones contractuales de terceros, al amparo del Artículo 1802 del Código Civil del 1930, 31 LPRA sec. 5141.[12] *Gen. Office Prods. v. A.M. Capen's Sons,* 115 DPR 553, 558 (1984). Para ello, se debe demostrar (1) que existe un contrato con el cual interfirió un tercero, (2) que medió culpa del tercero, es decir, que tenía conocimiento de la existencia del contrato y que causaría perjuicio, (3) que se ocasionó un daño, y (4) que el daño se produjo como consecuencia de la actuación culposa del tercero. *Íd.,* en la pág. 559; *Jusino et als. v. Walgreens,* 155 DPR 560, 575-576 (2001). Esta responsabilidad del tercero que interfiere con el contrato es solidaria con el contratante que, a sabiendas, incumplió. *Jusino et als. v. Walgreens, supra,* pág. 575; *Dennis, Metro Invs. v. City Fed. Savs.,* 121 DPR 197, 220 (1988).

-D-

---

[12] Por los hechos de este caso suscitarse durante la vigencia del Código Civil de 1930, derogado por virtud del Código Civil de 2020, Ley Núm. 55-2020, según enmendada, 33 LPRA sec. 5311 *et seq.,* es aplicable el antiguo estatuto.

Por otro lado, es norma trillada que la acción para exigir responsabilidad civil por las obligaciones derivadas de la culpa o negligencia prescriben por el transcurso de un (1) año desde que la persona agraviada tenía conocimiento. Art. 1868 del Código Civil de 1930, *supra*, sec. 5298. Como norma general, dicho término prescriptivo comienza a transcurrir desde que la persona agraviada conoció o debió conocer los elementos necesarios para ejercer su causa de acción, siendo estos que sufrió un daño y quién lo causó. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1068 (2020); *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 774 (2003); *Colón Prieto v. Géigel*, 155 DPR 232, 247 (1984). Ahora bien, si el desconocimiento del elemento fáctico o material que impide conocer quién causó el daño se debe a la falta de diligencia de la persona agraviada, el desconocimiento de la identidad del causante no produce un efecto interruptor. *Vera v. Dr. Bravo*, 161 DPR 308, 327-328 (2004); *Vega v. Pérez & Cía, Inc.*, 135 DPR 746, 755 (1994); *López v. Autoridad de Carreteras*, 133 DPR 243, 256 (1993). En tal virtud:

> Los tribunales tienen el deber de determinar, atendidas las circunstancias particulares de cada caso, si el perjudicado ejerció la diligencia de un hombre razonable y prudente, de tener ante sí suficientes manifestaciones e indicios exteriores del sufrimiento de un perjuicio potencial, para identificar lo más prontamente que fuese posible la existencia de un daño […]". *Vera v. Dr. Bravo, supra*, pág. 330.

Sabido es que la prescripción se interrumpe por cada cocausante del daño por separado. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 389 (2012).

A la luz de la normativa jurídica antes expuestas, procedemos a resolver.

-IV-

En el presente caso, HPES nos planteó que el TPI incidió al denegar su solicitud de desestimación, toda vez que la *Demanda*

*enmendada* estaba prescrita y PEG no presentó alegaciones suficientes para una acción en daños e interferencia torticera.

Como cuestión de umbral, al recurrirse de una resolución interlocutoria, nos topamos ante un recurso susceptible de revisión mediante *certiorari*, cuya expedición está guiada por los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, 52.1 y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40.

Tras una evaluación sosegada de la totalidad del expediente ante nuestra consideración y a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra*, R. 40, declinamos ejercer nuestra función discrecional de intervenir con el dictamen interlocutorio recurrido en esta etapa de los procedimientos.

Primero, previamente esta Curia apelativa emitió una *Sentencia*, la cual advino final, firme e inapelable mediante la que se autorizó a que PEG enmendara la *Demanda* para añadir a HPES como codemandado e incluir alegaciones en contra de dicha parte. Véase KLCE202300193. Segundo, del expediente surge que, una vez el TPI evaluó la solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, determinó que de los hechos alegados en la *Demanda enmendada* existían suficientes alegaciones y prueba dirigida a establecer que HPES intervino indebidamente con el contrato suscrito entre el Sr. Ramos y PEG. A saber, el Foro Primario fundamentó su denegatoria a la desestimación en que, a la luz de los hechos bien alegados en la *Demanda enmendada*, existía una reclamación plausible que justifique la posible concesión de un remedio a favor de PEG. Además, el TPI resolvió, con base a los hechos esbozados en la *Demanda enmendada*, así como la fecha en que PEG adquirió conocimiento sobre ciertas actuaciones del Sr. Ramos, que la misma no estaba prescrita. Por ello, el Foro recurrido le otorgó un término al peticionario para presentar su contestación a la *Demanda enmendada*.

Al examinar los documentos que nos ocupan, concluimos que la determinación recurrida es razonable y no atisbamos que el Foro Primario haya actuado contrario a derecho ni abusado de su discreción. Por otro lado, no se nos demostró que la expedición del auto evitaría un fracaso a la justicia.

En virtud de todo lo anterior, denegamos la expedición del auto de *certiorari* solicitado.

-V-

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari* que nos fuera solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones